NOT FOR PUBLICATION
File Name: 07a0098n.06
Filed: February 8, 2007

NO. 05-4061

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,                    ON APPEAL FROM THE
                                                UNITED STATES DISTRICT
v.                                      COURT FOR THE NORTHERN
                                                DISTRICT OF OHIO

PATRICK J. HEAD,

      Defendant-Appellant.

_____/

BEFORE: GUY, SUHRHEINRICH, and GRIFFIN, Circuit Judges.

**SUHRHEINRICH, J.**, Defendant-Appellant Patrick J. Head ("Defendant") appeals from the order of judgment and sentence of his April 14, 2005, conviction in the United States District Court, Northern District of Ohio, Eastern Division ("district court") for being a felon in possession of a firearm and possession with intent to distribute crack cocaine. We **AFFIRM**.

**I. Facts**

In January of 2004, the Akron Police Department received information from a confidential informant that Defendant was selling crack cocaine from his residence at 750 Thayer Street, Akron, Ohio. The informant agreed to make controlled purchases of crack, that occurred on January 27, January 30, February 3, and March 24, 2004.[1] On March 29, 2004,

_____

[1]The jury returned not guilty verdicts for controlled purchases that occurred in January and February.

based upon an affidavit describing the "controlled purchase," a search warrant was issued to search Defendant's residence within three days.

On March 30, 2004, at 8:00 a.m., officers in unmarked police cars set up surveillance on 750 Thayer Street in order to execute the search warrant. Officers believed Defendant was inside the residence because his car was in the driveway. At approximately 8:30 a.m., other officers arrived in unmarked vehicles to assist. Just before the officers attempted to execute the warrant at approximately 10:00 a.m., Defendant unexpectedly left in a Jeep Cherokee, the car in his driveway and the same vehicle he was driving the day of the most recent controlled buy. The narcotics detectives attempted to dispatch a marked patrol car to stop Defendant, but one was not available. For safety reasons, it is the policy of the Akron Police Department not to use unmarked vehicles to pull over a suspect. None of the detectives or officers on scene at the time had a marked police vehicle. Thus, Defendant was not immediately apprehended at his house. The unmarked cars followed Defendant for a short distance until it was safe to apprehend him.

Defendant stopped at a gas station approximately one mile from his 750 Thayer Street residence. He then was approached by officers at the gas station, handcuffed, and taken back to his residence so that officers could execute the search warrant. Defendant was taken inside his home and allowed to secure his pit bulls. A 9 mm pistol with ammunition, drug paraphernalia, money, cell phones, and approximately 29 grams of crack cocaine were found in the residence.

After the evidence was seized, Defendant was given his *Miranda* rights, which he voluntarily waived. When asked why he lied about not having any guns in the house, Defendant replied that he had "forgot it was in the bedroom." When asked by Detectives if his fingerprints would be on the gun, Defendant said they probably would because he had touched the gun. When questioned about the crack cocaine, Defendant made the following incriminating

2

statement to Detective James Palmer: "Come on, this is small time." "I'm small. You know that. If you have been watching me, you know I don't do any deals at this house."

On May 5, 2004, and February 2, 2005, Defendant was indicted by a grand jury. He was charged with one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2000), and five counts of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (2002). On May 25, 2004, and February 10, 2005, Defendant was arraigned and entered a plea of not guilty to all counts. On December 22, 2004, Defendant filed a Motion to Suppress certain statements he made to law enforcement officials after they finished the search of his residence.[2] A suppression hearing was held on January 10, 2005. At the conclusion of evidence by the parties, the court reiterated its earlier ruling that the physical evidence obtained at 750 Thayer Street, and the statements made by Defendant after the execution of the search warrant, would not be suppressed.

On April 14, 2005, a jury found Defendant guilty on Counts 1, 2 and 6.[3] Defendant was found not guilty on Counts 3, 4, and 5, which alleged further intent to distribute crack cocaine. On July 7, 2005, Defendant was sentenced to 120 months custody and eight years of supervised

---

[2]Although not part of this appeal, Defendant first filed a Motion to Suppress certain tangible evidence seized from his house during the March 30, 2004, search. Defendant argued that information offered in support of the search warrant was stale and was otherwise inadequate to justify a search of his residence. The district court denied this motion to suppress on July 27, 2004.

[3]Count 1: on or about March 30, 2004, in the Northern District of Ohio (Eastern Division), Patrick Head, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce a firearm. Count 2: that on or about March 30, 2004, in the Northern District of Ohio, Eastern Division, Patrick Head, did knowingly and intentionally possess with the intent to distribute approximately 25.41 grams of a controlled substance (cocaine base). Count 6: that on or about March 24, 2004, in the Northern District of Ohio, Eastern Division, Patrick Head, did knowingly and intentionally possess with the intent to distribute approximately 1.82 grams of a controlled substance (cocaine base).

release on Count 1, 130 months custody and eight years of supervised release on Count 2, and 130 months custody and eight years of supervised release on Count 6, with all to run concurrently. A Notice of Appeal was timely filed on August 11, 2005.

Defendant argues that his conviction should be vacated because (1) he was detained in violation of his Fourth Amendment rights, and (2) any incriminating statements made during his detention should been suppressed. Because Defendant concedes that he was given properly-phrased *Miranda* warnings prior to the inculpatory statements he seeks to suppress, Defendant's second request depends upon resolution of the first. Additionally, Defendant argues that his sentence should be vacated because the 100:1 crack cocaine ratio is unconstitutional, and the district court erred in not sentencing him below the mandatory minimum under the United States Sentencing Guidelines.

## II. Standard of Review

When reviewing the denial of a motion to suppress, this Court reviews a district court's factual finding for clear error and its legal conclusions de novo. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). All evidence must be viewed "in the light most likely to support the district court's decision." *Id.*; *see also United States v. Montgomery*, 377 F.3d 582, 585 (6th Cir. 2004) ("When considering the denial of a suppression motion, we must view the evidence in the light most favorable to the government.").

## III. Analysis

As to the first issue, Defendant concedes the police had the authority to detain occupants of his residence while the search was being conducted but argues that they did not have the authority to arrest him. Defendant acknowledges this Court is bound by the precedent set forth in *Michigan v. Summers*, 452 U.S. 692, 705 (1981), but contends his case is distinguishable

4

because he was no longer on the "premises." Defendant also argues that his Fourth Amendment rights were violated when the police improperly followed him for about one mile before making the arrest, which he contends was outside the scope of what the courts have defined as the proper locale in which an individual can be detained pursuant to a search warrant.

In *Summers*, 452 U.S. at 705, the Supreme Court held "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." In *Summers*, police stopped the defendant as he was "descending the front steps." *Id*. at 693. The Supreme Court noted that the detention of the defendant was justified to prevent flight of the individual, to minimize the risk of harm to the officers, and to effectuate an orderly completion of the search. *Id*. at 702-03.

The general holding of *Summers* has been extended by this Court in *United States v. Cochran*, 939 F.2d 337 (6th Cir. 1991); *see also United States v. Yates*, 132 F. Supp. 2d 559 (E.D. Mich. 2001) (holding the stop of a defendant two miles from his home, when he was traveling away from his residence, did not violate the defendant's Fourth Amendment rights). In *Cochran*, the police went to the defendant's house to execute a search warrant and observed the defendant leaving the premises by car. *Id*. at 338. The car traveled a short distance before it was stopped by the police and the defendant was detained for the search. *Id*. The defendant in *Cochran* also tried to factually distinguish *Summers* on the same grounds as the Defendant in this case: he was not on the premises but had traveled a short distance before being stopped. *Id*. at 339. This Court held that this distinction was not significant, stating:

> *Summers* does not impose upon police a duty based on geographic proximity (i.e., defendant must be detained while still on his premises); rather, the focus is upon police performance, that is, whether the police detained defendant as soon as practicable after departing from his residence. Of course, this performance-based

5

duty will normally, but not necessarily, result in detention of an individual in close proximity to his residence.

*Cochran*, 939 F.2d at 339.

The officers in this case detained Defendant as soon as practicable after he left his residence. At the time Defendant was seen leaving his residence, all officers present were in unmarked vehicles. Testimony from Detectives indicated that, because of officer safety concerns, it is not the practice of the Akron Police Department to stop vehicles in unmarked police cars. One of the detectives testified that calls were placed into the dispatch center for any available marked cars; according to the dispatch, none were available. The Detectives followed Defendant until he pulled into a gas station approximately a mile from his residence. At that point, the officers could safely detain Defendant without undue risk to the officers' safety. *See Summers*, 452 U.S. at 702-03. This was the first opportunity for the Detectives to detain Defendant. Detectives then elicited help from Defendant to enter his residence and secure his pit bulls. In light of these factors, not only was Defendant detained as soon as practicable after leaving his residence, but the officers' performance in detaining him was reasonable to ensure their safety and to effectuate a safe and efficient search of the residence. Defendant's detention was not a violation of his Fourth Amendment rights.

Defendant does not raise a *Miranda* claim on appeal and concedes that his incriminating statements were given after a valid *Miranda* warning. Given the conclusion that Defendant was not unlawfully detained, nothing about the original stop taints the voluntariness of Defendant's post-search, post-*Miranda* statements. Accordingly, the district court was correct in denying Defendant's Motion to Suppress his incriminating statements.

6

Defendant next challenges the constitutionality of the 100:1 crack versus cocaine ratio. Defendant argues that he does not fall into the category of a "major" drug dealer because he participated in the present matter to support his own drug habit, and the 100:1 ratio created an unjustified mandatory minimum sentence. Defendant asks the 100:1 ratio be declared unconstitutional because (1) it disproportionately affects black defendants and (2) more reasonable mandatory minimum sentences would then be available for the courts. This Court has repeatedly found the 100:1 crack versus cocaine ratio to be constitutional. *See United States v. Smith*, 2006 FED App. 0293N (6th Cir.); *United States v. Johnson*, 40 F.App'x 93, 96 (6th Cir.); *see also United States v. Washington*, 127 F.3d 510, 517-518 (6th Cir. 1997) (rejecting defendant's constitutional challenges to the 100:1 ratio and noting the decision was consistent with all other circuits); *United States v. Welch*, 97 F.3d 142, 154 (6th Cir. 1996) (holding defendant's challenge of constitutionality of the 100:1 ratio as meritless and the disparity as insufficient grounds for downward departure from the Sentencing Guidelines); *United States v. Pickett*, 941 F.2d 411, 418-19 (6th Cir. 1991) (100:1 ratio of crack to cocaine does not violate Substantive Due Process standards or constitute cruel and unusual punishment under the Eighth Amendment); *United States v. Levy*, 904 F.2d 1026, 1034 (6th Cir. 1990) (rejecting claims that Anti-Drug Abuse Act of 1986 violates the Eighth Amendment prohibition against cruel and unusual punishment and the 100:1 ratio as unconstitutionally disproportionate). Defendant's claim is meritless.

Defendant's final argument is that, post-*Booker*, the 100:1 ratio created unjustified mandatory minimum sentences. Defendant argues that the ratio must be declared unconstitutional so that more reasonable mandatory minimum sentences are available for the courts. This Court has recently held that, even post-*Booker*, the 100:1 ratio is not per se

7

unreasonable. *See United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2006).  Accordingly, we affirm the judgment of the district court.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**