JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Tajmahal Frazer ("defendant"), appeals from the denial of his motion to suppress evidence as well as his convictions and sentence for two counts of possession of drugs, two counts of drug trafficking, and possession of criminal tools. He also appeals the trial court's decision that granted the State's forfeiture petition. For the reasons that follow, we affirm.
 {¶ 2} Defendant's convictions stem from his arrest following an anonymous report of drug activity and subsequent police investigation at 21000 Gardenview, Maple Heights, Ohio (the "Gardenview residence"). Police received numerous calls from an anonymous female that reported a drug-trafficking scheme being operated out of the Gardenview residence and described as follows: the dealers would have packages delivered to various addresses; different females would sign for the delivery; the dealers would wait to see if there was any trouble and, if not, they would pick up the package and take it to the Gardenview residence, where its contents of marijuana were broken down and repackaged for sale.
 {¶ 3} This prompted police surveillance of the Gardenview residence and two trash pulls from its tree lawn in an effort to corroborate the information supplied by the anonymous caller. Among other things, police recovered items addressed to defendant at different addresses. Police also found trash bearing the name of Ronley Bynoe but were unable to verify this individual's existence despite investigations of various databases. Det. Byard testified that he was unable to find a social security number, driver's license, or any photograph of Ronley Bynoe. *Page 4 
However, a criminal background check of the name Tajmahal Frazer resulted in two very similar social security numbers and a conviction for marijuana possession.
 {¶ 4} From the first trash pull, police were able to verify the anonymous tipster's claim that defendant had been in New York on certain dates in February by finding his boarding pass and plane ticket. From the second trash pull, police found marijuana mixed in with large amounts of packaging material.
 {¶ 5} Det. Byard prepared an affidavit in support of a search warrant including the above information. Although the trash pulls included a trip itinerary for a religious conference in New York on dates in February that coincided with the plane ticket, this was not included in the affidavit. Det. Byard also did not mention that a Federal Express box was in the trash from ProFlowers, along with what appeared to be a Valentine card sent to "Taj." The affidavit averred that defendant is Jamaican, when in fact he was born in the Virgin Islands. And, Det. Byard included reference to defendant's marijuana conviction in Georgia. It was later determined that defendant was not the person convicted of that offense. Byard explained that he could not exclude defendant because he did not have access to his fingerprints prior to the arrest.
 {¶ 6} A search warrant was issued and police executed it on March 3, 2006. Det. Byard and Officer Canter began surveillance of the Gardenview residence around 1:00 p.m. They observed a red Toyota pickup truck backed into the driveway with a black male (later identified as Dexter Jordan) sitting in the driver's seat. The *Page 5 
truck was parked next to the side door. Officer Canter drove around the block and then saw Jordan standing between the house and the truck. Jordan was placing a large cardboard box into the bed of the truck. Jordan drove off and Det. Byard followed him.
 {¶ 7} Maple Heights police stopped the vehicle about one mile from the Gardenview residence. Two boxes of marijuana were recovered from the truck bed and Jordan was arrested. Police seized a cell phone from Jordan along with documentation of his identification. The truck was towed to the police station where a search of it found paperwork that identified the truck's owner as being Richard Martin. Police returned to the Gardenview residence to await the arrival of the SWAT team to execute the warrant.
 {¶ 8} In the meantime, they observed defendant arrive in a Toyota Sequoia. He pulled into the driveway. After talking on his cell phone, defendant backed the Sequoia out of the driveway and parked it on the street. He stood in the apron of the driveway talking on the phone and looking around. Defendant had entered through the side door of the house without difficulty. A few minutes later, Richard Martin arrived in an Infinity and he also went inside the house. Police awaited SWAT arrival for another 40 minutes to an hour. Meanwhile, continuous calls came in on the cell phone police had seized from Jordan. The numbers were later matched to two cell phones that were recovered from inside the Gardenview residence. The phones were not registered to either defendant or Richard Martin, nor were they *Page 6 
dusted for fingerprints. Nonetheless, the phones were in use inside the residence at the time that defendant and Martin were the only occupants of the residence. It was established that there was contact between the two phones and Dexter Jordan's cell phone during the police surveillance on March 3, 2006.
 {¶ 9} SWAT made safe entry into the house and secured the occupants, which were defendant and Richard Martin.
 {¶ 10} Det. Byard went down the steps and observed candles lined up on the sides of the steps, with some of them burning. He smelled a strong odor of marijuana. Defendant was in the basement and a search of his person recovered various identifications in the name of Tajmahal Frazer and also Ronley Bynoe. He had an Ohio driver's license, a Virgin Island identification, and identification from the State of Georgia. He was also in possession of a Walt Disney access card in the name of Ronley Bynoe. The other articles seized from defendant included cash, jewelry, and a key to the Gardenview residence. A cell phone was also found lying nearby.
 {¶ 11} Other officers that participated in the execution of the search warrant testified. One of them observed defendant on the stairs leading to the basement. Upon seeing the officer, defendant turned around and went into the basement. Co-defendant Richard Martin was found in the basement wearing a pair of latex gloves. The basement was described as a sort of workshop. There were several tables set up and large blocks of marijuana, which appeared that someone was breaking up to *Page 7 
package in one-gallon size freezer bags. The blocks were being "hacked off and weighed on a scale that was in the basement" and being placed into freezer bags.
 {¶ 12} Another cell phone was seized from the residence as well as an unloaded gun that was found in the master bedroom between the mattresses. Nearby, police recovered a loaded magazine clip and gun holster.
 {¶ 13} Another witness testified that he rented the Gardenview residence to a man named "TJ." This witness stated that defendant "could look like" the man who rented the Gardenview residence. The receipt for the deposit on the premises was made to "TJ Frazer."
 {¶ 14} Two vehicles were seized from defendant and returned to the dealerships that held the title to them. The titles were never transferred due to false information defendant provided about employment. One dealer indicated that defendant requested to be hired so he could establish employment. The dealerships returned defendant's deposits on the vehicles to police.
 {¶ 15} Defendant's girlfriend testified that she did not know defendant to have any employment.
 {¶ 16} Prior to trial, the court conducted an evidentiary hearing on motions to suppress, which it denied. The trial court partially granted defendant's Rule 29 motions as to the firearm specifications contained in counts one and two. The jury returned guilty verdicts as follows: guilty of possession of marijuana in an amount equal to or exceeding five thousand grams but less than twenty thousand grams; *Page 8 
guilty of drug trafficking in an amount equal to or exceeding five thousand grams but less than twenty thousand grams; guilty of possession of marijuana in an amount equal to or exceeding twenty thousand grams but not guilty of the firearm specification; guilty of drug trafficking in an amount equal to or exceeding twenty thousand grams but not guilty of the firearm specification; and guilty of possession of criminal tools.
 {¶ 17} Defendant appeals, assigning four assignments of error for our review.
 {¶ 18} "I. The trial court erred when it failed to grant the appellant's motion to suppress evidence."
 {¶ 19} A reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. State v. Klein (1991),73 Ohio App.3d 486. However, the reviewing court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the appropriate legal standard.State v. Claytor (1993), 85 Ohio App.3d 623, 627.
 {¶ 20} Defendant maintains that suppression of the evidence was warranted because, he believes, the State failed to establish the requisite probable cause to support the issuance of the search warrant. In Gates v. Illinois (1983), 462 U.S. 213, 217, the United States Supreme Court considered "the application of the Fourth Amendment to a magistrate's issuance of a search warrant on the basis of a partially corroborated anonymous informant's tip." In Gates, the Court reasoned, "[a]n *Page 9 
informant's `veracity,' `reliability,' and `basis of knowledge' are all highly relevant in determining the value of his report. * * * [T]hese elements * * * should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Id. at 230.
 {¶ 21} Gates directs us to employ a totality of the circumstances analysis to determine whether probable cause supported the issuance of a search warrant. Id. at 238. Gates also provides that "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's `determination of probable cause should be paid great deference by reviewing courts.'" Id. at 236, other citation omitted; see, also, State v. George (1989),45 Ohio St.3d 325, 330.
 {¶ 22} "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for * * * [concluding]' that probable cause existed." Id. at 238-239, citingJones v. United States, 362 U.S., at 271.
 {¶ 23} "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the *Page 10 
bare conclusions of others." Id. at 239. For example, an officer's statement that he has received "reliable information from a credible person" and does "believe" that contraband would be found at a home, is insufficient standing alone to create probable cause sufficient to support a search warrant. Id. Conversely, where "an affidavit relying on hearsay `is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.' * * * even in making a warrantless arrest an officer `may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" Id. 243.
 {¶ 24} There is a presumption of the validity of a warrant affidavit, which the defendant can overcome by an offer of proof showing the affidavit contained a knowing, intentional, or reckless falsity.State v. Roberts (1980), 62 Ohio St.2d 170, 178, citing Franks v.Delaware, 438 U.S. 154. However, the validity of the affidavit will not be overcome by such showing if, when the "affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to support a finding of probable cause." Id., citing Franks, 438 U.S. at 171-172.
 {¶ 25} The questions before us are (1) whether, under the totality of the circumstances, the affidavit provided a substantial basis for the magistrate's conclusion that there was a fair probability that marijuana or related paraphernalia would be found in the defendant's residence; and (2) if there remains sufficient *Page 11 
content in the affidavit to support the warrant after any false information is excluded from it. In each regard, we find in the affirmative.
 {¶ 26} Det. Byard testified at the suppression hearing. He was the affiant for the search warrant sought for the Gardenview residence. He received a call from an anonymous source stating that the residence was used as a "stash-house" for marijuana and also providing other specific details. He received approximately ten different phone calls from this source. Det. Byard was told that Jamaicans would have marijuana shipped to different houses all over Maple Heights, that females would sign for the boxes, and then the boxes would be taken to the Gardenview residence where the contents would be broken down and repackaged for resale. The source reported that defendant lived in the Gardenview residence. Defendant would fly to New York once a month and the source provided a specific date of one such trip.
 {¶ 27} Det. Byard corroborated information supplied by the anonymous source, including that defendant flew to New York on the stated dates. Det. Byard made a trash pull at the Gardenview residence and found the ticket and boarding pass. He also found mail addressed to defendant bearing different addresses. Det. Byard recovered a Fed-Ex priority overnight packing material box with a delivery address on East 131st Street. A computer search confirmed that the East 131st St. address and various other addresses and vacant houses were associated with defendant. *Page 12 
 {¶ 28} Det. Byard made a second trash pull from the Gardenview residence where he recovered a large amount of styrofoam wrapping with marijuana mixed within it. The wrapping was similar to wrappings he had seen in other marijuana investigations. The second trash pull also recovered a few pairs of latex gloves, four or five empty boxes of gallon freezer bags, several empty cans of air fresheners, approximately 30 empty boxes, and bank statements belonging to defendant. Det. Byard smelled unburnt marijuana coming from the bag and is familiar with the use of latex gloves in the handling of marijuana. All of this was consistent with what the anonymous source had told him.
 {¶ 29} Det. Byard also ran a criminal history check on the name Tajmahal Frazer. The check returned two social security numbers that were very similar. One of them produced a conviction in Georgia in 1997 for possession of marijuana. Det. Byard included this information in his affidavit for the search warrant. He was unable to do a fingerprint check of defendant prior to the search warrant. Subsequent to defendant's arrest, however, he determined that defendant was not the subject of the Georgia marijuana conviction.
 {¶ 30} Defendant maintains that the affidavit contained stale and false information. In particular, defendant objects to the inclusion of the past conviction and that defendant is a Jamaican male. Even excluding this information from the affidavit, there was sufficient probable cause under the totality of the circumstances to support the issuance of a warrant. *Page 13 
 {¶ 31} Defendant's additional claims that the affidavit contained material omissions is unavailing. Defendant objects that the affidavit failed to disclose an itinerary for a three-day conference in New York for a religious seminar (that coincided with the dates contained in the boarding pass and ticket). Defendant also believes the affidavit should have disclosed that there was a package from ProFlowers recovered from one of the trash pulls with a Valentine's Day message to "Taj." He maintains that this information supplies innocuous explanations for defendant's activities. The presence of the itinerary and a box from ProFlowers do not negate the probability that defendant was using the Gardenview residence as a marijuana "stash-house" for repackaging and resale as alleged by the informant. Even if those facts were included, they would not have overcome the other information in the affidavit that corroborated the informant's allegations and established a fair probability that marijuana would be found in the Gardenview residence.
 {¶ 32} Assignment of Error I is overruled.
 {¶ 33} "II. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of drug possession and drug trafficking."
 {¶ 34} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind *Page 14 
of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 35} Defendant maintains that there was insufficient evidence to prove drug possession pursuant to R.C. 2925.11, which provides:
 {¶ 36} "(A) No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 37} The defendant believes the evidence is lacking as to proof of his "knowledge" (R.C. 2901.22(B)) and the element of "possession" (R.C.2925.01(K)). In support of his argument, defendant relies on State v.Duganitz (1991), 76 Ohio App.3d 363, 367 and State v. Tell, Cuyahoga App. No. 84790, 2005-Ohio-1178. In Duganitz, this Court found insufficient evidence to sustain a carrying concealed weapon conviction against a driver where a gun was found under a blanket near the front seat of the car but the passenger had been left alone in the car for a period of time.
 {¶ 38} Possession can be actual or constructive and this element can be established through circumstantial evidence. State v. Scalf (1998),126 Ohio App.3d 614, 620, citing State v. Boyd (1989),63 Ohio App.3d 790, 796-797 and State v. Pruitt (1984), 18 Ohio App.3d 50, 58 (finding "possession may be established where *Page 15 
the defendant occupies the premises with others but the drugs are found in the defendant's living area and in plain view throughout the apartment" and "readily useable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession.")
 {¶ 39} This case has material differences to the facts that controlled in Duganitz. The landlord's agent of the Gardenview residence testified that he rented the premises to someone who "could look like" defendant. He confirmed that a receipt for the deposit was made out to "TJ Frazer."
 {¶ 40} Det. Byard's testimony and the circumstantial evidence connected defendant to the Gardenview residence and marijuana found inside. An anonymous tipster reported that defendant was using the Gardenview residence as a "stash-house" for marijuana. An independent investigation discovered that defendant was disposing of belongings there, including mail and airline tickets in his name, and mail was also found inside with his name on it. Dexter Jordan was seen loading a cardboard box into a truck in the driveway of the residence. When Jordan was stopped a mile away, marijuana was found inside that box and a cell phone was taken from him. When police returned to the residence, they observed defendant talking on a cell phone. He was later joined by Richard Martin and both went inside the residence where they remained for approximately 40 minutes until SWAT made entry pursuant to the search warrant. *Page 16 
 {¶ 41} In the meantime, police documented a number of calls being made to Jordan's cell phone, which they later matched to two cell phones recovered from inside the residence where defendant and Martin were arrested.
 {¶ 42} There was a strong odor of marijuana in the residence. Defendant was in the basement of the house where Richard Martin was also present and wearing latex gloves. The stairs leading to the basement were lined with both lit and unlit candles. There was also gallon-size freezer bags, more unlit candles, two tables, marijuana, and scales found in the basement where defendant was apprehended. The basement was described by officers as a "workshop" where blocks of marijuana were being broken down, weighed, and then placed into gallon-size freezer bags.
 {¶ 43} At the time of his arrest, defendant was in possession of multiple forms of identification in various names, including one from the State of Georgia. He was also in possession of a key to the Gardenview residence.
 {¶ 44} Construing the evidence in a light most favorable to the State, there was sufficient evidence to submit this charge to the jury.
 {¶ 45} Next, defendant argues that there was insufficient evidence to prove drug trafficking under R.C. 2925.03, which provides that:
 {¶ 46} "(A) No person shall knowingly do any of the following:
 {¶ 47} "* * *
 {¶ 48} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has *Page 17 
reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 49} As set forth above, there was ample evidence to submit this charge to the jury. The trial court did not err in overruling defendant's motion for acquittal on the drug possession and drug trafficking charges.
 {¶ 50} Assignment of Error II is overruled.
 {¶ 51} "III. Appellant's convictions for drug possession and drug trafficking were against the manifest weight of the evidence."
 {¶ 52} A reviewing court may find a verdict to be against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. To warrant reversal of a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id.
 {¶ 53} Defendant argues that his convictions were against the manifest weight of the evidence for the same reasons he believes his convictions were based on insufficient evidence. Having reviewed the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and resolving *Page 18 
conflicts in the evidence, we cannot conclude that the trier of fact clearly lost its way such that defendant's convictions resulted in a manifest miscarriage of justice.
 {¶ 54} Assignment of Error III is overruled.
 {¶ 55} "IV. The trial court improperly granted the State's forfeiture petition."
 {¶ 56} This error pertains to the forfeiture of cash, automobile down payments for a Toyota Sequoia and Toyota Avalon, a 1998 Lexus, jewelry, and computer equipment. Following a hearing, the trial court granted the State's petition under R.C. 2933.43.[1] Defendant contends that the State failed to establish by a preponderance of the evidence that the items seized were to be used in the commission of a criminal offense and that the vehicles were seized without a court order.
 {¶ 57} At the time of the proceedings in this matter, contraband was defined under 2901.01 as follows:
 {¶ 58} "* * * any property described in the following categories:
 {¶ 59} "(a) Property that in and of itself is unlawful for a person to acquire or possess;
 {¶ 60} "(b) Property that is not in and of itself unlawful for a person to acquire or possess, but that has been determined by a court of this state, in accordance with law, to be contraband because of its use in an unlawful activity or manner, of its *Page 19 
nature, or of the circumstances of the person who acquires or possesses it, including, but not limited to, goods and personal property described in division (D) of section 2913.34 of the Revised Code;
 {¶ 61} "(c) Property that is specifically stated to be contraband by a section of the Revised Code or by an ordinance, regulation, or resolution;
 {¶ 62} "(d) Property that is forfeitable pursuant to a section of the Revised Code, or an ordinance, regulation, or resolution, including, but not limited to, forfeitable firearms, dangerous ordnance, obscene materials, and goods and personal property described in division (D) of section 2913.34 of the Revised Code;
 {¶ 63} "(e) Any controlled substance, as defined in section 3719.01 of the Revised Code, or any device, paraphernalia, money as defined in section 1301.01 of the Revised Code, or other means of exchange that has been, is being, or is intended to be used in an attempt or conspiracy to violate, or in a violation of, Chapter 2925. or 3719. of the Revised Code;
 {¶ 64} "(f) Any gambling device, paraphernalia, money as defined in section 1301.01 of the Revised Code, or other means of exchange that has been, is being, or is intended to be used in an attempt or conspiracy to violate, or in the violation of, Chapter 2915. of the Revised Code;
 {¶ 65} "(g) Any equipment, machine, device, apparatus, vehicle, vessel, container, liquid, or substance that has been, is being, or is intended to be used in *Page 20 
an attempt or conspiracy to violate, or in the violation of, any law of this state relating to alcohol or tobacco;
 {¶ 66} "(h) Any personal property that has been, is being, or is intended to be used in an attempt or conspiracy to commit, or in the commission of, any offense or in the transportation of the fruits of any offense;
 {¶ 67} "(i) Any property that is acquired through the sale or other transfer of contraband or through the proceeds of contraband, other than by a court or a law enforcement agency acting within the scope of its duties;
 {¶ 68} "(j) Any computer, computer system, computer network, computer software, or other telecommunications device that is used in a conspiracy to commit, an attempt to commit, or the commission of any offense, if the owner of the computer, computer system, computer network, computer software, or other telecommunications device is convicted of or pleads guilty to the offense in which it is used;
 {¶ 69} "(k) Any property that is material support or resources and that has been, is being, or is intended to be used in an attempt or conspiracy to violate, or in the violation of, section 2909.22, 2909.23, or 2909.24 of the Revised Code or of section 2921.32 of the Revised Code when the offense or act committed by the person aided or to be aided as described in that section is an act of terrorism. As *Page 21 
used in division (A)(13)(k) of this section, "material support or resources" and "act of terrorism" have the same meanings as in section2909.21 of the Revised Code."[2]
 {¶ 70} "An item may be forfeited because the item itself is unlawful to possess, or an item may be forfeited because of its connection to unlawful activity. The extent of the connection need not be great."State v. Casalicchio (1991), 58 Ohio St.3d 178, 180.
 {¶ 71} The State established a connection between the subject items and their use in the commission of a criminal offense. In particular, the State established evidence that defendant was not employed. Nonetheless, he made sizable down payments for each vehicle. He had receipts for expensive jewelry and traveled. An auto dealer testified that defendant asked to be hired so that he could show employment. Det. Byard determined that defendant had lied about his employment history in attempting to purchase the vehicles. The vehicles were never titled to defendant and were returned to the dealerships.
 {¶ 72} This Court has previously determined that the preponderance of the evidence supports the forfeiture of expensive property, which a defendant had paid for in cash during a time he had no verifiable employment. See State v. Brown (July *Page 22 
30, 1992), Cuyahoga App. No. 60501. The State presented a preponderance of the evidence to warrant forfeiture of all of the subject items.
 {¶ 73} Further, since the vehicles were not titled to defendant it was not improper for them to be returned to the dealerships, who were the titled owners of the vehicles at the time of the seizure. See R.C.2933.43(B)(1), repealed effective 7-1-07. At the time the vehicles were returned to the dealerships, no court order was required.
 {¶ 74} Assignment of Error IV is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and MARY EILEEN KILBANE, J., CONCUR.
[1] This statute was repealed effective July 1, 2007 but was the law in effect at the time of the relevant proceedings.
[2] The current version of 2901.01(A)(13) defines "contraband" as "any property that is illegal for a person to acquire or possess under a statute, ordinance, or rule, or that a trier of fact lawfully determines to be illegal to possess by reason of the property's involvement in an offense. `Contraband' includes, but is not limited to, all of the following:
"(a) Any controlled substance, as defined in section 3719.01 of the Revised Code, or any device or paraphernalia * * *." R.C.2901.01(A)(13). *Page 1