JOURNAL ENTRY AND OPINION
{¶ 1} In 2006, defendant-appellant, Richard Martin ("Martin"), was charged with two counts of possession of marijuana, two counts of trafficking in marijuana, and one count of possession of criminal tools.[1] Each of the possession and trafficking counts were accompanied by a one-year firearm specification. Martin filed a motion to suppress, which was denied after a full hearing.
 {¶ 2} The matter proceeded to trial. After the close of the State's evidence, the court granted Martin's motion for acquittal on two of the firearm specifications. The jury found Martin guilty of all counts, except the two remaining firearm specifications.
 {¶ 3} Martin appeals his conviction and the trial court's denial of his motion to suppress. Finding no merit to the appeal, we affirm.
 {¶ 4} The following evidence was presented at the suppression hearing and trial.
 {¶ 5} Detectives of the Southeast Area Law Enforcement ("SEALE") Task Force received numerous phone calls from an informant telling them that a residence on Gardenview in Maple Heights was being used as a "stash house" for large quantities of marijuana. The informant had direct knowledge of the operation *Page 4 
and was able to provide detectives with the name of the owner of the house, Tajmahal Frazer ("Frazer"), and specific details regarding Frazer's travel to New York. Based on the information the informant gave police, SEALE was able to verify one of Frazer's travel dates with a local airline.
 {¶ 6} SEALE performed two trash pulls at the Gardenview house and discovered a boarding pass for the exact flight the informant detailed, small amounts of marijuana, and material commonly used in preparing marijuana for sale, including latex gloves, plastic freezer bags, and air fresheners. Detectives also found mail addressed to Frazer at other addresses, which upon investigation were vacant houses. Detectives developed a theory that Frazer was having marijuana shipped to him at the other addresses, and then picking up the packages and taking them to Gardenview for repackaging.
 {¶ 7} SEALE obtained a search warrant for the Gardenview house. Before the search warrant was executed, detectives in unmarked cars conducted surveillance of the house. They observed a male backing a red truck into the driveway and loading a box into the truck. The truck left and detectives called dispatch to request that a marked police car stop the truck. The truck was being driven by co-defendant Dexter Jordan ("Jordan"), but police later discovered that Martin owned the truck. Jordan signed a written consent for the police to search the truck. Police found two boxes of marijuana, including the box which detectives had observed being loaded into the truck at Frazer's house. *Page 5 
 {¶ 8} After Jordan's arrest, police returned to Frazer's house and waited for the SWAT team. When the team arrived, police knocked and announced their presence. They forced entry into the house when no one answered. Police discovered a "workshop" in the basement with several tables containing large blocks of compressed marijuana in various stages of being "broken down" and repackaged. Police found two scales and dozens of boxes of gallon freezer bags, many containing marijuana and one bag containing "shake," or parts of marijuana that dealers discard. Police also discovered a gun in the master bedroom.
 {¶ 9} Both Martin and Frazer were in the basement when police arrived. Martin was wearing latex gloves.
 {¶ 10} Following his conviction, the trial court sentenced Martin to the minimum mandatory sentence of eight years in prison.
 {¶ 11} Martin's appellate counsel raises three assignments of error. Martin filed a pro se supplemental brief in which he raises an additional eight assignments of error. The assignments of error will be combined when appropriate for review.
 Crim.R. 12(F) {¶ 12} In the first and third assignments of error, Martin argues that the trial court erred by not including findings of fact on the record when it denied the motion to suppress. Martin claims that Crim.R. 12(F) requires the trial court to state its findings of fact on the record when denying a motion to suppress.
 {¶ 13} Crim.R. 12(F) provides in part that "where factual issues are involved in *Page 6 
determining a motion, the court shall state its essential findings on the record." It is well-settled in Ohio, however, that in order for a court to have a duty to issue findings of fact, there must be a request from the defendant. State v. Brown (1992), 64 Ohio St.3d 476, 481,597 N.E.2d 97, citing Bryan v. Knapp (1986), 21 Ohio St.3d 64, 65,488 N.E.2d 142; State v. Benner (1988), 40 Ohio St.3d 301, 317-318,533 N.E.2d 701, 718. Because the record is devoid of any such request from Martin, the trial court had no duty to issue findings of facts. SeeState v. Little (Oct. 12, 2000), Cuyahoga App. No. 77258. Moreover, the transcript of the suppression hearing provides us with a sufficient basis to review Martin's assignments of error and, in particular, the correctness of the trial court's suppression ruling. See State v.Harris, Cuyahoga App. No. 85270, 2005-Ohio-2192. Accordingly, we find that Martin was not prejudiced by the trial court's failure to issue findings of fact and we are able to address the merit of his claims.
 {¶ 14} Therefore, the first and third assignments of error are overruled.
 Motion to Suppress {¶ 15} In the second assignment of error, Martin argues that the trial court erred when it denied his motion to suppress. In the first supplemental assignment of error, Martin argues that his due process rights were violated when police failed to file the search warrant. Because both assigned errors challenge the validity of the search warrant, we will discuss them together.
 {¶ 16} In reviewing a trial court's ruling on a motion to suppress, a reviewing *Page 7 
court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v.DePew (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542; State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See, State v. Curry (1994), 95 Ohio App.3d 93, 96,641 N.E.2d 1172, citing, State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54. A reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. Id., see, also, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
 {¶ 17} Martin raises several arguments to support his position that the trial court should have granted his motion to suppress, all of which challenge the affidavit supporting the search warrant. First, he claims that the affidavit was insufficient to establish probable cause to search the house. Second, he argues that the affiant withheld important information. Finally, he argues that failure to file the search warrant rendered it invalid.
 {¶ 18} In determining the sufficiency of probable cause for an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."State v. *Page 8 George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, following Illinois v. Gates (1983), 462 U.S. 213, 238-239,103 S. Ct. 2317, 76 L. Ed. 2d 527. The George court further held:
 "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id., paragraph two of the syllabus.
 {¶ 19} In the instant case, SEALE received information that Frazer's home was a "stash house" for large quantities of marijuana. The informant described to police how Frazer had large amounts of marijuana shipped to him at various addresses and how he would take the drugs back to the Gardenview house to repackage them for resale. The informant also told police that Frazer often flew to New York, and the informant provided police the specific date when Frazer last flew to New York.
 {¶ 20} Detective Byard, the affiant for the search warrant, stated in his affidavit that a check with the airline confirmed Frazer's flight. The affidavit also detailed the two trash pulls police performed at Frazer's home, which revealed a small amount of marijuana and materials commonly used in packaging marijuana for sale. Also found in the trash was the boarding pass for the flight which the informant had mentioned. *Page 9 
 {¶ 21} Although there was no evidence in the affidavit to demonstrate the affiant's prior knowledge of the veracity of the confidential informant, the informant's statements were corroborated by police investigation and the trash pulls. We find that this corroboration provided sufficient indicia of the reliability and veracity of the informant's statements. See Illinois v. Gates (1983), 462 U.S. 213,242-246, 76 L. Ed. 2d 527, 103 S. Ct. 2317; State v. Banna, Cuyahoga App. Nos. 84901 and 84902, 2005-Ohio-2614.
 {¶ 22} The State concedes that the affidavit incorrectly stated Frazer's criminal record. That alone, however, does not render the affidavit insufficient. In Franks v. Delaware (1978), 438 U.S. 154, the United States Supreme Court limited a defendant's attack on the veracity of a warrant affidavit to instances where "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the alleged false statement is necessary to the finding of probable cause." Id., at 155, 156.
 {¶ 23} In State v. Roberts (1980), 62 Ohio St.2d 170, 178, the Ohio Supreme Court stated that:
 "[A] challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim. This offer of proof should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained."
 {¶ 24} In the instant case, Martin failed to meet this initial burden. No offer of *Page 10 
proof was made at the suppression hearing other than general assertions that the affidavit contained false information. Additionally, even if the affidavit's false material was set aside, Martin would still have to establish that the affidavit's remaining content is insufficient to establish probable cause. Franks, supra at 156. We find that, although Martin challenged the use of an anonymous source to establish probable cause for the search warrant, the two trash pulls provided additional evidence to support the informant's claims. Thus, even if we were to disregard the incorrect information in the search warrant about Frazer's criminal record, the remainder of the information included in the affidavit provided the issuing judge a substantial basis upon which to conclude that probable cause existed to search the Gardenview premises.
 {¶ 25} Martin's final challenge to the search warrant is his claim that the failure to file the search warrant and affidavit render it invalid. First, we note that the search warrant return and affidavit were filed and journalized on March 10, 2006, a week after the initial search occurred. Second, failure to comply with the requirements of Crim.R. 41(C), (D) and (E) with respect to filing documents connected with the execution of a search warrant does not render the search warrant invalid unless: (1) there is evidence that the papers did not exist, or (2) sufficient cause was not demonstrated by affidavit to justify the issuance of the search warrant. Columbus v. Wright (1988),48 Ohio App.3d 107, 548 N.E.2d 320. We find this argument without merit. *Page 11 
 {¶ 26} Thus, we find that the trial court correctly denied the motion to suppress. The second assignment of error and first supplemental assignment of error are overruled.
 Insufficient Evidence {¶ 27} In the second supplemental assignment of error, Martin challenges his conviction, arguing that he was not present when the drugs in the truck were seized. Although not phrased as such, Martin essentially claims that there was insufficient evidence to convict him of drug trafficking and possession of drugs.
 {¶ 28} The standard of review for the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus, which states:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
See also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394; State v. Davis (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966.
 {¶ 29} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541 and State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. Thompkins at 390. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, *Page 12 
but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks at paragraph two of the syllabus.
 {¶ 30} Martin claims that the drugs were recovered from a vehicle that was unlawfully searched, he was not in the truck when it was pulled over, and the drugs recovered from the vehicle were intermingled with drugs and evidence seized at Frazer's house.
 {¶ 31} In Michigan v. Summers (1981), 452 U.S. 692, 705,69 L. Ed. 2d 340, 101 S. Ct. 2587, the United States Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." In Summers, police stopped the defendant on his front steps. The Court found that the detention of the defendant was justified to prevent his flight, to minimize the risk of harm to the officers, and to effectuate an orderly completion of the search. Id. at 702-03.
 {¶ 32} Summers was extended by the 6th Circuit inUnited States v. Cochran (6th Cir. 1991), 939 F.2d 337, in which the court upheld a search of a defendant's car after the defendant was seen leaving his house and the police had a search warrant for the house. See also United States v. Yates, 132 F. Supp. 2d 559
(E.D. Mich. *Page 13 
2001) (holding the stop of a defendant two miles from his home, when he was traveling away from his residence, did not violate the defendant's Fourth Amendment rights).
 {¶ 33} In Cochran, the court stated:
 "Summers does not impose upon police a duty based on geographic proximity * * *; rather, the focus is upon police performance, that is, whether the police detained defendant as soon as practicable after departing from his residence. Of course, this performance-based duty will normally, but not necessarily, result in detention of an individual in close proximity to his residence." Id. at 339.
 {¶ 34} The case at bar is similar to United States v. Head
(6th Cir. 2007), 216 Fed. Appx. 543, 547. InHead, as in the instant case, the police detained the defendant as soon as practicable after he had left his residence. At the time Jordan was seen leaving Frazer's residence, all the officers on the scene were in unmarked vehicles. Testimony from detectives indicated that, because of safety concerns, they would not attempt to effectuate a traffic stop in an unmarked police car. One of the detectives testified that he called Maple Heights police to request that a marked car stop Martin's truck. Moreover, it would not have been practical for the detectives to seize the truck in the driveway because that may have alerted residents in the house to police activity. In light of these factors, we find that, not only was Jordan detained as soon as practicable after leaving his residence, but the police performance in detaining him was reasonable to ensure their safety and to effectuate a safe and efficient search of the residence. See Head at 546.
 {¶ 35} Moreover, the truck was searched pursuant to a valid search warrant *Page 14 
and Jordan signed a consent form allowing police to search the truck. Although Martin was not in his truck when it was pulled over, he owned the truck and some of the seized drugs were in the same box which police had observed being loaded into his truck.
 {¶ 36} Finally, there is no evidence that the drugs and evidence seized in the house and in the truck were intermingled. The drugs found in the truck were attributable to Martin because he owned the truck in which much of the marijuana was found and because he was arrested in the basement of Frazer's house, in the midst of the packaging materials, and wearing latex gloves. Moreover, the amount of drugs found in the house alone, more than 20,000 grams, was more than sufficient to establish the basis of the charges for which Martin was convicted.
 {¶ 37} Therefore, the second supplemental assignment of error is overruled.
 Drug Testing {¶ 38} In the third supplemental assignment of error, Martin argues that he was deprived of a fair trial because the drugs were only partially tested. He supports his argument by questioning the reliability of the investigating detective's testimony and the field test that the detective performed on the marijuana.
 {¶ 39} First, we note that Martin did not raise this objection at the trial court level. In fact, the reports detailing the lab results of the Bureau of Criminal Investigation's ("BCI") testing of the drugs were entered into evidence by stipulation and without objection. *Page 15 
 {¶ 40} The failure to interpose a timely objection at a time when the trial court can correct an error constitutes a waiver of any objection to the admissibility of evidence. Nevertheless, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Thus, we review the admission of the evidence under the plain error standard of Crim.R. 52(B).
 {¶ 41} Plain error consists of an obvious error or defect in the trial proceeding that affects a substantial right. Crim.R. 52(B). The Ohio Supreme Court has stated that for a reviewing court to find plain error, the court must find error, the error must be plain, which means an obvious defect in trial proceedings, and the error must have affected the defendant's substantial rights. State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68, 759 N.E.2d 1240.
 {¶ 42} We find no error in the admission of the BCI reports or the lab's method of testing drugs. The random sampling method of testing has been consistently upheld by Ohio courts. See In re Lemons (1991),77 Ohio App.3d 691, 696, 603 N.E.2d 315; State v. Rose, 144 Ohio App.3d 58,2001-Ohio-3297, 759 N.E.2d 460; State v. Mattox (Nov. 18, 1983),13 Ohio App.3d 52, 468 N.E.2d 353; State v. Smith (Dec. 23, 1997), Franklin App. No. 97APA05-660; State v. Smith (Oct. 4, 1990), Cuyahoga App. No. 57572. The "random sampling method of testing creates a reasonable inference that all similar contraband contains the same controlled substance as that tested, at least when the contraband is recovered together and *Page 16 
similarly packaged." State v. Samatar, 152 Ohio App.3d 311,2003-Ohio-1639, 787 N.E.2d 691. Accordingly, evidence of the random sampling method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested.
 {¶ 43} Additionally, Martin did not take advantage of R.C. 2925.51, which gives defendants the right to have a portion of the alleged drug substance preserved for independent analysis.
 {¶ 44} Therefore, we overrule the third supplemental assignment of error.
 Exculpatory Evidence {¶ 45} In the fourth supplemental assignment of error, Martin argues that the police lost or destroyed potentially exculpatory evidence. Martin claims that police purposefully destroyed or lost the latex gloves they claimed he was wearing when arrested. Martin now denies ever wearing the gloves and claims that if the State could produce the gloves, he could have them tested to prove just that. He further claims that the gloves were the only physical evidence linking him to the drugs. We disagree.
 {¶ 46} The Ohio Supreme Court has held that the key issue when exculpatory evidence is alleged to have been withheld is whether that evidence is material to the finding of guilt based upon the totality of the record and whether there is a reasonable likelihood that the undisclosed material would have affected the guilty verdict, thereby preventing the defendant from having a fair trial. State v.Johnston *Page 17 
(1988), 39 Ohio St.3d 48, 60, 529 N.E.2d 898, citing U.S. v. Bagley
(1985), 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481.
 {¶ 47} In the instant case, there was ample evidence even without the gloves to convict Martin. The truck containing some of the marijuana belonged to Martin. And Martin was found in Frazer's home in the presence of more drugs and drug packaging material. Moreover, Martin's claim that he never wore the gloves is unsupported by the record. The officers' testimony that he was wearing the gloves was unrebutted during trial.
 {¶ 48} Therefore, the fourth supplemental assignment of error is overruled.
 Sentencing {¶ 49} In the fifth and sixth supplemental assignments of error, Martin challenges his sentence. He argues that his sentence was contrary to law, the trial court should permit him to apply for judicial release, and the trial court erred when it corrected the journal entry regarding his conviction.
 {¶ 50} First, we note that Martin did not object to the constitutionality of his sentence at the sentencing hearing. Thus, he has forfeited the issue for appellate purposes. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, at If 21. However, as mentioned above, plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Crim.R. 52(B). Therefore, we are confined to a plain error analysis.
 {¶ 51} The trial court sentenced Martin to the mandatory term of incarceration *Page 18 
which the trial court was required to impose. See R.C. 2925.03(C)(3)(f). Additionally, defendants with mandatory sentences imposed upon them are not eligible for judicial release; thus, the trial court did not err in stating that Martin could not apply for judicial release. See R.C.2929.20.
 {¶ 52} Lastly, we find no error in the trial court's correcting its journal entry to reflect the jury's verdict. The original journal entry stated Martin was guilty of drug trafficking, without indicating that he had been acquitted of the accompanying firearm specification. The corrected entry stated that Martin was found not guilty of the firearm specification. Thus, Martin's claim that the corrected journal entry changed the jury's verdict is without merit.
 {¶ 53} The fifth and sixth supplemental assignments of error are overruled.
 Joinder {¶ 54} In the seventh supplemental assignment of error, Martin argues that he was prejudiced by the joinder of his co-defendant at trial.
 {¶ 55} Crim.R. 8(A) permits the joinder of offenses "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, the trial court is required to order separate trials. See Crim.R. 14. A defendant claiming error in the denial of severance must affirmatively show that his *Page 19 
rights were prejudiced and that the trial court abused its discretion in refusing separate trials. State v. Sapp, 105 Ohio St.3d 104,2004-Ohio-7008, at Tj 69, 822 N.E.2d 1239, 105 Ohio St.3d 104, citingState v. Torres (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288.
 {¶ 56} We first we note that Martin did not move for severance until the day of trial when he made an oral motion as the trial was about to begin. The trial court denied the motion. The record reflects that Martin did not renew his motion at the close of the State's case or at the close of all the evidence. A defendant waives any claim of error concerning joinder if the defendant fails to renew an objection at the end of the State's case or the conclusion of all the evidence. State v.Fortson (Aug. 2, 2001), Cuyahoga App. No. 78240.
 {¶ 57} Even if Martin had renewed his objection to joinder, however, we are not persuaded that he suffered prejudice as a result of the joinder. Neither Martin nor Frazer testified, presented any witnesses, nor made statements that were introduced into evidence. They also did not otherwise show that their defenses were antithetical to one another. Additionally, Martin complains that he was prejudiced due to his association with co-defendant Jordan. But Jordan pled guilty prior to trial and, therefore, did not go to trial with Martin. Martin's argument is without merit.
 {¶ 58} Therefore, the seventh supplemental assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 59} In the eighth supplemental assignment of error, Martin argues that his *Page 20 
right to effective assistance of trial counsel was violated. Martin maintains that his counsel should have offered mitigation evidence at his sentencing hearing, should have challenged the field testing of the marijuana, and failed to investigate exculpatory evidence.
 {¶ 60} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v.Madrigal, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland at 687-688.
 {¶ 61} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, vacated on other grounds (1978), *Page 21 438 U.S. 910, 57 L.Ed.2d 1154, 98 S. Ct. 3135; State v. Calhoun,86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905.
 {¶ 62} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland at 686. This is commonly referred to as the Strickland test, and the failure to prove either prong makes it unnecessary for a court to consider the other.Madrigal at 389, citing Strickland at 697.
 {¶ 63} We find no ineffectiveness by counsel and agree with the State that it was not the actions of trial counsel but rather the weight of the evidence that resulted in Martin's conviction.
 {¶ 64} Therefore, the eighth supplemental assignment of error is overruled.
 {¶ 65} Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 22 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., and MARY J. BOYLE, J., CONCUR
[1] Martin was indicted with co-defendants Dexter Jordan and Tajmahal Frazer. Jordan pled guilty prior to trial. Frazer was tried with Martin, and found guilty of drug possession and trafficking in drugs and possession of criminal tools. His conviction was affirmed in State v.Frazer, Cuyahoga App. No. 89097, 2007-Ohio-5954. *Page 1