**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven F. COCHRAN,
Defendant–Appellant.**

**No. 90–2052.**

United States Court of Appeals,
Sixth Circuit.

Argued May 20, 1991.

Decided July 17, 1991.

Rehearing and Rehearing En Banc
Denied Sept. 6, 1991.

Amy B. Hartmann, Office of the U.S. Atty., Christopher P. Yates (argued), Detroit, Mich., for plaintiff-appellee.

Herbert A. Jordan (argued), Cornelius Pitts, Detroit, Mich., for defendant-appellant.

Before KENNEDY and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.

KENNEDY, Circuit Judge.

This case presents two issues. First, whether defendant's fourth amendment rights were violated when he was detained by police officials in order to execute a search warrant for his residence. Second,

whether the District Court abused its discretion in giving a supplemental *Allen*[1] charge to the jury rather than granting defendant's motion for a mistrial. For the following reasons, we AFFIRM.

## I.

### A.

Defendant pled guilty to possession of an unregistered firearm not identified by a serial number in violation of 26 U.S.C. § 5861(d), (i), and was convicted of interstate transportation of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Defendant was sentenced to 52 months incarceration on each count to run concurrently. This appeal followed.

### B.

On February 23, 1990, police officers went to defendant's residence in order to execute a search warrant. Prior to the search, defendant left his residence by car. In order to promote an orderly search, the police officers thought it best to conduct the search with the cooperation of the defendant but did not want to make a forcible entrance of the residence because he was believed to always carry a firearm and a guard dog remained in the residence. Accordingly, the officers decided to stop defendant in his vehicle as he exited the premises, and to request his assistance in entering the house.

Defendant travelled a short distance before the police stopped him. The officers approached on either side of defendant's vehicle and ordered him to get out of the car. A rapid flurry of events ensued. As the officers approached the vehicle, defendant made a quick motion with his right arm. The officer on the driver side opened defendant's door and again ordered defendant out of the car. Defendant's right arm moved faster and the officer began to pull defendant out of the car. The officer on the passenger side believed that defendant was reaching for a gun and, while defendant was being pulled out of the car, opened the car's glove box. A nine millimeter clip fell out. The officers were aware that defendant was a convicted felon and therefore was prohibited from possessing a weapon or ammunition. A search of the vehicle ensued, and an unregistered firearm was found in the trunk.

## II.

Defendant argues that the officers' seizure of his person and the search and seizure of his car were unreasonable and thus violative of the fourth amendment. According to defendant, the police officers could have served defendant with the search warrant before he entered his car and drove away. By waiting, the officers allegedly manipulated the circumstances surrounding the execution of the search warrant for defendant's residence in order to create an opportunity to search defendant's vehicle.

The District Court properly analyzed the actions of the officers as three separate events: the initial stop, the search of the glove compartment, and the subsequent search of the vehicle. Applying *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the District Court initially concluded that the police officers were justified in their initial stop of defendant in his vehicle.[2] In *Summers*, as in the instant case, the dispute focused on whether police had authority to require an individual to re-enter his house and to remain there while they executed a search warrant of such individual's dwelling.

The Supreme Court concluded that such a detention amounted to a seizure but did not violate the fourth amendment. The Court determined that the intrusion created by the detention was less than the intru-

---

1. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. The District Court also concluded that the investigatory stop and search of defendant and his vehicle was constitutional because these acts were conducted as a proper inventory search pursuant to a vehicle seizure by the Drug Enforcement Administration. We need not address this alternate ground, however, because we have determined that the officers' acts were constitutionally appropriate on other grounds.

sion allowed by the search warrant; that this type of detention would seldom be exploited by the police in order to gain further information; and that the public stigma associated with this detention was less than a "compelled visit to the police station." *Id.* at 701–02, 101 S.Ct. at 2594. The Court further noted that the justifications for such detention—preventing flight of the individual, minimizing the risk of harm to the officers, and the orderly completion of the search—were legitimate and reasonable. *Id.* at 702–03, 101 S.Ct. at 2594. Finally, the Court observed that the existence of the search warrant provided an articulable and individualized suspicion which justified the detention. Balancing these factors, the Court concluded that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705, 101 S.Ct. at 2595 (footnotes omitted).[3]

■ Defendant does not dispute the holding in *Summers,* but attempts to factually distinguish it from the instant case. In *Summers,* police stopped the individual as he was "descending the front steps." *Id.* at 693, 101 S.Ct. at 2589. In contrast here, police stopped defendant after he had driven a short distance from his home. We do not find this distinction significant, however. *Summers* does not impose upon police a duty based on geographic proximity (i.e., defendant must be detained while still on his premises); rather, the focus is upon police performance, that is, whether the police detained defendant as soon as practicable after departing from his residence. Of course, this performance-based duty will normally, but not necessarily, result in detention of an individual in close proximity to his residence.[4]

■ The initial detention of the police was proper in light of *Summers.* The record does not indicate exactly how far defendant had travelled before being stopped. The record does indicate that the address of defendant's residence was 6316 Aspen Ridge Boulevard. At the time of his detention, defendant was travelling southbound on Aspen Ridge Boulevard and the police stopped him "almost immediately after exiting his residence." *Id.* at 53. Other testimony indicates that defendant was stopped "a very short distance" from his residence, *id.* at 62; and the court found that defendant was stopped "a short distance" from his residence, *id.* at 205. We do not find the actions of the police improper in light of the short distance travelled by defendant. Further, the facts and evidence do not suggest that the police attempted to manipulate the circumstances in order to search defendant's car. Indeed, it was defendant's acts, not those of the police, that led to the search of the automobile.

■ Based on defendant's acts, the police officers conducted two other searches incident to the initial stop of defendant. An officer searched the glove compartment when defendant was observed moving his right arm quickly while being ordered from the car. This search was reasonable under the circumstances. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983) (stating that "search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief ... that the suspect is dangerous and the suspect may gain immediate control of weapons"). The product of this search—the nine millimeter magazine—gave the police probable cause to search the car. *United States v. Ross,* 456 U.S.

---

**3.** Although not required by *Summers,* the government offered the following facts which demonstrate the risk to the officers and support their decision to detain defendant: 1) the presence of a Doberman Pinscher in defendant's residence; 2) the layout of the condominium; and 3) defendant's criminal history and propensity to carry firearms.

**4.** For example, an individual may park his car in a garage attached to his residence. If such garage can be accessed through an interior entrance and the garage door is electronically operated, an individual may only be accessible to the police after he has exited the garage and has driven off his premises.

798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982).

In conclusion, the initial stop of defendant for the purpose of detention while searching his home was valid. The purpose and scope of the initial stop was broadened because of defendant's, not the officers', acts. Hence, we disagree with defendant that the officers attempted to manipulate the circumstances so as to expand the scope of their search warrant. The District Court did not err in its conclusion that the acts of the police officers comported with fourth amendment requirements.

■ Defendant also argues that the District Court erred when it gave the jury an *Allen* charge instead of granting defendant's motion for mistrial. The jurors commenced deliberations on July 3, 1990. On July 5th, after five hours of deliberations, the jury informed the judge that "the jury is deadlocked and this will not change." Rather than granting defendant's motion for a mistrial, the District Court gave an *Allen* charge to the jury. The jury returned a guilty verdict about two hours later.

■ A district court's decision to give an *Allen* charge is reviewable for an abuse of discretion. *See, e.g., United States v. Sawyer*, 902 F.2d 1217 (6th Cir.1990). We review allegations of error stemming from an *Allen* charge based on the totality of the circumstances. After a review of the record, we hold that the District Court did not abuse its discretion. *See Sawyer*, 902 F.2d at 1220–21.

### III.

For the foregoing reasons, we AFFIRM the decision of the District Court.

WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part:

I am in agreement with the decision of the majority with respect to the giving of the *Allen* charge in this case. There was no error in respect to this aspect of the case.

The district court found the initial stop of Cochran justifiable under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While it is unclear that the officers in the case actually possessed a reasonable suspicion of danger justifying a *Terry* stop and subsequent arrest, *Terry* does not provide a means or stepping-stone for compelling the occupant of a residence, away from those premises, to return to the residence to aid in a search thereof. The district court held that this return of Cochran was justifiable under *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The majority bases its decision also on *Summers*. Summers' residence, like that of Cochran's, was the subject of a search warrant for narcotics. The police "encountered" Summers, however, "descending the front steps" of his residence. *Id.* at 693, 101 S.Ct. at 2589. Clearly Summers was found on the very premises which were the subject of the warrant, and the police "requested his assistance in gaining entry and detained him while they searched the premises." *Id.* at 693, 101 S.Ct. at 2589. Although the authorities seized Summers "within the meaning of the Fourth Amendment," no constitutional violation was found in respect to his being seized and detained prior to this arrest. *Id.* at 696, 101 S.Ct. at 2591. The court found that "a significant restraint" on Summers' liberty had occurred, but this detention had occurred fortuitously on the premises subject to the search warrant.

I find the circumstances in this case to differ materially from the circumstances in *Summers*, and I, therefore, dissent with regard to the basis for the initial *away from the premises* and forced *return* which were the subject of the search warrant. I do not, of course, take issue with the decision in *Summers* that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Id.* at 705, 101 S.Ct. at 2595. (footnotes omitted).

Actions of the police in *Summers* took place on an unplanned, contemporaneous kind of reasonable action taken as they

"were about to execute" the search warrant. *Id.* at 693, 101 S.Ct. at 2589. Here, in contrast, the police deliberately waited until after Cochran had departed the premises and then stopped him anticipating assistance in executing the search warrant for his *residence.* I am unwilling to extend the rationale of *Summers* to a situation where the owner of premises subject to a search warrant is some distance, even a "short" distance from the premises, and is stopped, detained, or taken into custody for the purpose of assisting the police in gaining entry into the residence itself. Neither a *Terry* stop nor a forfeiture seizure of a vehicle has before been used as a means to bring about assistance in carrying out a search warrant at another location.[1] *See Terry v. Ohio; United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

The real focus of *Michigan v. Summers* was that a stop and detention of an owner on his premises, which were the subject of a search warrant, while the search took place and prior to arrest was not unconstitutional police conduct. I am not persuaded that this constitutes precedent and authority for the action in this case away from the premises in controversy. I, therefore, respectfully dissent from this extension of the stop and detention rule based on *Summers.* (No other authority for this action is cited by the district court or the majority opinion.)

---

1. Stopping a subject citizen thought to carry firearms on his person or in a vehicle on a public street away from his residence hardly seems conducive to public safety. The police had decided previously "not to obtain an arrest warrant for his person." J/A 111. Officer Crock testified that they did intend to seize the vehicle through forfeiture, but no warrant for this purpose, for search of the vehicle or arrest of Cochran, was sought despite having ample opportunity to do so. J/A 112.