OPINION
{¶ 1} The defendant-appellant, Alice V. Torres, appeals the April 12, 2004 judgment entry of the Seneca County Court of Common Pleas denying her motion to suppress evidence.
 {¶ 2} On April 10, 2004, a police officer arranged for a confidential informant to buy approximately twenty to twenty-five pounds of marijuana from David Ysasi. The police officer knew that Ysasi was involved with Juan Martinez and that Ysasi would be visiting Martinez's home at 515 East North Street in Fostoria, Ohio in order to pick up five pounds of marijuana in empty cereal boxes for delivery to the confidential informant. Around 9 a.m., the police set up surveillance at 515 East North Street to confirm Ysasi's arrival. Ysasi arrived at 515 East North Street, exited the vehicle, entered the house, and a short time later exited the house carrying a large cardboard box, which he placed into the rear driver side of his vehicle.
 {¶ 3} The police followed Ysasi to a local carry-out and observed Ysasi give the confidential informant the large cardboard box from Ysasi's vehicle. Ysasi left the scene, and the police confirmed that the large cardboard box contained approximately twenty-two pounds of marijuana. Subsequently, Ysasi was arrested.
 {¶ 4} After Ysasi was arrested, some police officers again set up surveillance outside 515 East North Street because they were in the process of obtaining a search warrant for that residence. At approximately 3:10 p.m., the police observed a Hispanic male, later identified as Juan Martinez, leave 515 East North Street in a white van. Because of the events that unfolded earlier in the day, Martinez was followed and stopped in Hancock County, Ohio. The police officers explained to Martinez that he was being stopped because Ysasi was arrested for delivering approximately twenty-two pounds of marijuana that Ysasi obtained from 515 East North Street. Martinez admitted that he lived at that address and consented to have his vehicle searched. A small amount of marijuana and some drug paraphernalia were recovered, and Martinez was placed in the back of a police cruiser and read his rights.
 {¶ 5} The police officers informed Martinez that a search warrant was being prepared to search his residence at 515 East North Street. Therefore, Martinez informed the police officers that there was marijuana in a locked freezer on the first floor of his residence. Moreover, Martinez said that the key to the freezer had a red string attached to it. Martinez additionally informed the police that there was some cocaine in the upstairs bedroom.
 {¶ 6} While Martinez was talking to the police in Hancock County, Agent Mark Ellinwood was conducting surveillance at 515 East North Street when he noticed a white car in the driveway. Immediately thereafter, Agent Ellinwood was notified that a search warrant was obtained and some additional police officers were en route to execute the warrant. As Agent Ellinwood was suiting up for the search and waiting for the warrant to arrive, he observed a Hispanic female, later identified as Alice Torres, walk out the front door of the residence carrying a large, dark-colored trash bag. Agent Ellinwood saw Torres walk the garbage bag toward the white car. Torres went out of Agent Ellinwood's view for a moment, but he regained visual contact with her as the white car backed out of the driveway.
 {¶ 7} Agent Ellinwood testified that, based on his experience as a narcotics officer and the fact that a search warrant was en route to be served at the 515 East North Street, he believed that Torres was removing contraband or evidence before the search warrant arrived at the residence. Accordingly, Agent Ellinwood stopped Torres' car after it was driven approximately four or five houses down the road. It should be noted that Agent Ellinwood stopped Torres for investigative purposes because Torres did not break any traffic laws.
 {¶ 8} At the stop, Torres denied knowing anything about the dark-colored garbage bag Agent Ellinwood saw her carry out of the house at 515 East North Street. Nevertheless, Agent Ellinwood noticed a white, transparent bag in plain-view on the passenger side floor of Torres' vehicle. Agent Ellinwood walked around the vehicle and identified that marijuana was inside the bag. Agent Ellinwood asked Torres about the marijuana in her car. In response, Torres told Agent Ellinwood that the black garbage bag that he saw her carry out of the house was in the trunk of another vehicle in the driveway.
 {¶ 9} Agent Ellinwood advised Torres to drive back to her residence at 515 East North Street. Torres was immediately arrested and Mirandized.
The black garbage bag that Torres carried out of her home was found in the trunk of another vehicle, and it contained marijuana. Additionally, Torres' keychain had a long, red string attached to it, and a key on that keychain was later used to unlock the freezer where Martinez said the marijuana was located. The house was searched and some additional marijuana and cocaine were found. A firearm was also seized in the search.
 {¶ 10} Torres was indicted for one count of complicity to possession of cocaine, a felony of the second degree; one count of complicity to possession of marijuana, a felony of the third degree; and one count of complicity to possession of marijuana with a firearm specification, a felony of the second degree. Torres plead not guilty to all counts and filed a motion to suppress all the evidence seized from the vehicles and all statements that Torres made to Agent Ellinwood. After a suppression hearing was held, the trial court denied Torres' motion citing the United States Supreme Court decision in Michigan v. Summers (1981), 452 U.S. 692,101 S.Ct. 2587, as its basis for its judgment. Torres moved the court to submit a Findings of Fact and Conclusion of Law, but the trial court denied that motion stating:
The Court would direct defense counsel to its Judgment Entry datedSeptember 10, 2003 wherein the Court adopted the decision of Michigan v.Summers. Specifically in this case, the defendant was driving away fromthe home at which the search warrant had been issued. Agent Ellinwoodobserved a white Cadillac at the residence. The defendant exited thehouse and walked down the steps with a dark colored garbage bag. Thisactivity raised the agent's suspicion that contraband such as illegaldrugs were being transported out of the residence.
 Supporting this position, this Court takes note that twenty (20) poundsof marihuana originating from the same residence was sold earlier thesame day. Less than one block away from the residence, the Cadillac wasstopped. A shopping bag of marihuana was observed in plain view on thefloorboard of the passenger side of the front seat.
 Again, the Court adopts the decision in Summers where the stopping ofthe defendant was within the ambit of the search warrant had been issued[sic].
Judgment Entry Denying Defendant's Request for Findings of Fact and Conclusions of Law, April 12, 2004 (internal citations omitted).
 {¶ 11} Torres entered into a plea agreement with the State and plead nolo contendere to one count of complicity to possession of marihuana with a specification in violation of R.C. 2923.03(A)(2), 2925.11(A),2925.11(C)(3)(e), and 2929.13. She now appeals the judgment entry of the trial court denying her motion to suppress evidence. All assignments of error will be consolidated for the sake of judicial economy.
The trial court erred in failing to grant defendant-appellant's motionto suppress evidence and statements pursuant to the traffic stop, searchand questioning of defendant.
 The trial court erred in failing to grant defendant-appellant's motionto suppress evidence and statements pursuant to the investigative stop,search and questioning of defendant.
 The trial court incorrectly used the standard in Michigan V. Summers tofashion its' decision in the motion to suppress.
 {¶ 12} As a threshold matter, we must consider whether the law outlined in Summers, supra, applies to the facts and situation of this case.
 {¶ 13} In Summers, police officers were about to execute a warrant to search a house for narcotics. Summers, 452 U.S. at 693. As they were approaching Summers' home, they saw Summers descending down his front steps. Id. The police requested his assistance in gaining entry and detained him while they searched his home. Id. After finding contraband in his house, the police arrested Summers, searched his person, and found more narcotics. Id. Summers was charged with possession of the heroin found on his person and moved to suppress the evidence as a product of a unconstitutional search in violation of the Fourth Amendment. Id. at 694. The United States Supreme Court upheld the search ruling that "for Fourth Amendment purposes . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. at 705 (footnotes omitted).
 {¶ 14} In the case sub judice, Torres argues that Summers is inapplicable to the facts of this case because Agent Ellinwood did not physically have possession of the warrant when he stopped Torres' vehicle. Torres relies on the fact that the warrant was executed while
Agent Ellinwood stopped Torres as opposed to before Agent Ellinwood stopped Torres. Thus, Torres contends that the rule outlined in Summers
does not apply to her situation.
 {¶ 15} For guidance on this issue, we turn to United States v.Cochran (C.A.6, 1991), 939 F.2d 337 and State v. Wagner (July 27, 1994), 9th Dist. No. 93CA005660, 1994 WL 395619, unreported. In Cochran, the defendant left his residence as the police arrived to execute a search warrant. Cochran, supra at 338. The defendant traveled a short a distance away from his residence in his vehicle, was stopped by the police, and, after some events ensued, his car was searched and a weapon was found. Id. The court held that the police had authority to stop the defendant's vehicle under Summers. Id. The Sixth Circuit reasoned:
Summers does not impose upon police a duty based on geographicproximity (i.e., the defendant must be detained while still on thepremises); rather, the focus is upon police performance, that is, whetherthe police detained the defendant as soon as practicable after departingfrom his residence.
Id. at 339.
 {¶ 16} Moreover, in Wagner, the police were in the process of obtaining a search warrant when they entered a residence and detained the occupants. Wagner, supra at *1. The occupants were detained for approximately forty minutes until a warrant was obtained. Id. While the court held that the initial entrance into the home was unconstitutional, the court reasoned that detaining the occupants while a search warrant was secured was within the limited power of the Fourth Amendment. The court stated:
We believe that detention of a suspect for a reasonable period of timepending the arrival of a warrant strikes a reasonable balance of publicand individual concerns where police have received probable cause ofcriminal activity, are in the process of securing a warrant, and fearthat evidence will be lost or destroyed in the interim period. Id. at *2.
 {¶ 17} Reviewing the holdings of Cochran and Wagner together, we conclude that stopping Torres immediately after she left her residence and before the search warrant arrived on the scene does not amount to a Fourth Amendment violation. As in Cochran, Agent Ellinwood stopped Torres' vehicle approximately four or five houses from 515 East North Street, which was as soon as practicable given the fact that Agent Ellinwood was supervising the activity at 515 North East Street from a distance. Furthermore, the search warrant in this case was already secured and was en route to be executed at Torres' home when her vehicle was stopped; therefore, these facts fit comfortably within the rule established in Wagner, where a search warrant had not yet been obtained when the occupants of the house were detained.
 {¶ 18} Finally, we note that despite our holding that Summers does apply to the instant case, we also conclude that Agent Ellinwood had authority to stop Torres' vehicle under the Terry standard. See Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1898. It is widely held under Terry that a police officer, with reasonable suspicion of criminal activity based on articulable facts, may stop a vehicle and detain its occupants briefly for purposes of limited questioning. See, e.g. State v. Norman (1999),136 Ohio App.3d 46, 53, 735 N.E.2d 953; State v. Terry (1998),130 Ohio App.3d 253, 719 N.E.2d 1046; State v. Goodrich (1996),114 Ohio App.3d 645, 683 N.E.2d 855.
 {¶ 19} In the instant case, when Agent Ellinwood stopped Torres' vehicle, he was aware that: (1) Ysasi arrived earlier in the day and obtained approximately twenty pounds of marijuana from 515 East North Street; (2) Martinez admitted that there was marijuana and cocaine at 515 East North Street; (3) a search warrant was issued for 515 East North Street; (4) Torres was carrying a large, black garbage bag out of 515 East North Street prior to the execution of the search warrant; and (5) based on his experience in narcotics investigations, it was likely that Torres could be removing contraband from the residence. Taking into consideration all these factors, we conclude that Agent Ellinwood had reasonable suspicion that Torres may be engaged in criminal activity.
 {¶ 20} Accordingly, under either Summers or Terry, Agent Ellinwood stopped Torres' vehicle within the law prescribed by the Fourth Amendment. Accordingly, all three assignments of error are overruled.
Judgment Affirmed.
 Cupp, P.J., and Rogers, J., concur.