DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant Edward Jacobs appeals from his conviction by the Ross County Court of Common Pleas pursuant to his no contest plea to one count of possession of drugs. For the following reasons, we affirm the trial court's judgment.
 I. Facts {¶ 2} On July 7, 2005, Sgt. Larry Large, a detective with the Ross County Sheriffs Office, submitted an affidavit in support of a search warrant for the residence of Curtis Morehead Jr., located at 633 ½ E. Main St., Chillicothe, Ohio 45601. Sgt. Large averred that he had good cause to believe that evidence of drug trafficking, drug abuse or drug paraphernalia offenses would be discovered in the apartment. In his affidavit, Sgt. Large set forth the following facts as the basis for his belief: *Page 2 
 Over the past two months detectives from the US 23 Pipeline Drug Task Force have received numerous complaints in reference to suspicious activity at 633 ½ E. Main St., Chillicothe, Oh.
 Detectives have been contacted by at least three reliable confidential informants. The informants advised detectives that Curtis Morehead lives at 633 ½ E. Main St. The informants advised detectives that Morehead and Edward Jacobs are the subjects selling the crack cocaine from the apartment. The informants further advised detectives that there are cameras set up on the porch to the entrance of the residence and Morehead and Jacobs monitor the cameras. The informants also advised that they have observed several handguns in the house and that Morehead usually carries a gun in his pants.
 Within the last week detectives contacted a reliable confidential informant. The informant has provided detectives with information in the past and this has resulted in several search warrants and a large amount of crack cocaine being seized. The informant was searched and no contraband was found. The informant went to 633 ½ E. Main St. while being kept under constant surveillance by detectives. The informant was inside the residence for a short time and then exited and met with detectives at a predetermined location. The informant advised that there were several male subjects inside the residence. The informant further advised that the informant observed at least three guns in the residence (one shotgun and two handguns).
 Within the last seventy two hours detectives contacted a reliable confidential informant. The informant advised that crack cocaine could be purchased from 633 ½ E[.] Main St. The informant was searched and no contraband or monies were found. The informant was given an audio transmitter. The informant went to 633 ½ E. Main. St[.] and was kept under constant surveillance by detectives. The informant met with Curtis Morehead at the residence. The informant stayed at the residence for a short time and upon leaving met with detectives at a predetermined location again being kept under constant surveillance. The informant gave detectives an off white substance. The substance was field tested and did test positive for cocaine. The informant was again searched and no contraband or monies were found. The informant advised that the cocaine was purchased from Curtis Morehead and advised that during the course of the conversation Morehead advised that there was more cocaine at the residence.
 {¶ 3} The affidavit described the premises of 633 ½ E. Main St. as a "brick multi unit dwelling located on the north side of Main St. and being the upstairs apartment with *Page 3 
the entrance being covered by a porch and the numbers 633 ½ written in white on the south side of the porch." Based on Sgt. Large's affidavit, on July 7, 2005, the judge issued a search warrant for the apartment located at 633 ½ E. Main St.
 {¶ 4} Later that day, members of the Ross County Sheriffs Department, the U.S. 23 Pipeline Task Force, and the Chillicothe Police Department executed the warrant. Prior to the execution of the search warrant, Sgt. Large, who was conducting surveillance of the apartment in connection with the warrant, observed appellant leave the apartment and then return to the apartment area approximately 10 to 15 minutes later. Appellant did not re-enter the apartment. At the time the officers executed the warrant, appellant was standing outside the apartment building in the doorway or on the stoop of the downstairs apartment located at 635 E. Main St. Officers detained appellant at the location of the downstairs apartment. At some point during his detention, Sgt. Large questioned appellant about a locked safe located in the upstairs apartment. After officers escorted him inside the upstairs apartment, appellant opened the safe, which contained Oxycodone pills.
 {¶ 5} On November 4, 2005, a Ross County Grand Jury indicted appellant on one count of possession of drugs, in violation of R.C. 2925.11, a felony of the fifth degree. Appellant later filed a motion to suppress evidence. In his motion, he argued that officers illegally and improperly seized him during the execution of a search warrant and that any evidence obtained as a result of that unlawful seizure should be suppressed. At a hearing on the motion, the following testimony was presented:
 {¶ 6} Sgt. Large testified that he was conducting surveillance of the apartment that was the subject of the search warrant before the officers executed the warrant. He *Page 4 
testified that he observed appellant leave the apartment and return approximately 10 to 15 minutes later. He testified that when he returned, appellant went into the side yard by the downstairs apartment and later stepped into the doorway or the stoop of the downstairs apartment right below the apartment located at 633 ½ E. Main St. He testified that appellant was outside of the apartment building on the stoop or doorway when the tactical team "hit the residence." Sgt. Large further testified that after Officer Bower detained appellant, Sgt. Large went into the upstairs apartment and found a locked safe in the bedroom. After he read appellant his Miranda rights, Sgt. Large questioned him about the safe. Appellant agreed to open the safe, which had a digital lock. Inside the safe, officers found various items, including Oxycodone pills.
 {¶ 7} Appellant testified on his own behalf. He testified that he was inside the apartment located at 635 E. Main St. when he looked outside the kitchen door and observed "men running past the door with black ski masks on, bullet proof vest and rifles." He testified that he went "into the next room and then the screen door just jerked open and an officer entered, put a rifle to my head, told me to get on the floor of the kitchen and then he restrained me with some plastic — pull things and brought me outside of six thirty-five and then he searched me out — out in front of the door of six thirty-five." He further testified that after the officers searched the upstairs apartment, Sgt. Large came outside and asked him to go inside the upstairs apartment to open a safe. According to appellant, the officers never advised him of hisMiranda rights.
 {¶ 8} Following the hearing, the trial court concluded that appellant's detention was lawful. The court found that the search warrant was issued for the premises located at 633 ½ E. Main St., which was an upstairs apartment in a multi-apartment brick *Page 5 
apartment building. The court found that Sgt. Large observed appellant leave those premises and return 10 to 15 minutes later and that sometime very soon after that a tactical squad entered the premises. The court specifically found that appellant was standing outside on the stoop at the apartment located at 635 E. Main St. The court agreed with the prosecution that there is authority for limited detention of persons while a search warrant is being executed. The court found that because appellant had been recently seen exiting the apartment, his detention was appropriate. The court went on to find that appellant had beenMirandized before he made any incriminating statements and before he voluntarily opened the safe, which led to the finding of the contraband. Finding no basis to suppress any evidence, the court overruled appellant's motion.
 {¶ 9} At a change of plea hearing on February 15, 2008, appellant entered a no contest plea to the offense set forth in the indictment. After finding appellant guilty, the court sentenced appellant to six months in prison. Appellant now appeals the trial court's ruling on his motion to suppress.
 II. Assignment of Error {¶ 10} Appellant presents one assignment of error:
 THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS TO [SIC] EVIDENCE IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.
 III. Standard of Review {¶ 11} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and *Page 6 
is, therefore, in the best position to resolve factual questions and evaluate witness credibility. State v. Brooks, 75 Ohio St.3d 148, 154,1996-Ohio-134. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v.Landrum (2000), 137 Ohio App.3d 718, 722. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id., citing Ornelas v. United States (1996), 517 U.S. 690.
 IV. Appellant's Initial Detention {¶ 12} In his sole assignment of error, appellant contends that the trial court erred in failing to suppress evidence obtained during the execution of the search warrant, arguing that any evidence obtained against him, including his act of opening the safe and exposing its contents, should have been suppressed because his initial detention was unlawful. The State contends that appellant's detention was proper underMichigan v. Summers (1981), 452 U.S. 692. Appellant, however, asserts that the State's reliance on Summers and its progeny is misplaced because he was not a resident or "occupant" of the premises named in the search warrant and because prior to his detention, officers had no reliable information upon which to believe that he had a "reasonable connection to the premises."
 {¶ 13} In Summers, just as officers were about to execute a warrant to search a house for narcotics, they saw defendant go out the front door of the house and proceed down the steps. When the officers asked for his assistance in opening the door, he replied that he could not because he left his keys inside, but he could ring someone over the intercom. Another occupant came to the door, but did not admit the police officers. *Page 7 
As a result, the officers obtained entrance by forcing open the front door. Once inside, they detained defendant and several other occupants of the house while they conducted a search. After finding narcotics in the basement and determining that defendant was the owner of the house, officers arrested defendant, searched him, and found heroine in his jacket pocket. Summers at 693. The defendant moved to suppress the heroine, arguing that his initial detention was unlawful. Id. at 694.
 {¶ 14} The Supreme Court held that the defendant's initial detention constituted a "seizure" but that it did not violate theFourth Amendment. Relying on a line of cases stemming from Terry v. Ohio
(1968), 392 U.S. 1, the Court reasoned that limited intrusions on personal security incident to a search based upon less than probable cause may be justified by "substantial law enforcement interests * * * so long as police have an articulable basis for suspecting criminal activity." Summers at 699. The Court determined that the intrusion created by the detention was less than the intrusion allowed by the search warrant, that the police would seldom exploit this type of detention in order to gain further information, and that the public stigma associated with this detention was less than a "compelled visit to the police station." See U.S. v. Cochran (1991), 939 F.2d 337, citingSummers at 701-02. The Court then identified several law enforcement interests that justify a detention on less than probable cause when police execute a search warrant, including the following: preventing flight in the event that incriminating evidence is found, minimizing the risk of harm to the officers and other occupants, and the orderly completion of the search, which is facilitated by the presence of the occupants. Summers at 702-03. Finally, the Court observed that it is also appropriate to consider the nature of the articulable and individualized suspicion on which the police base the *Page 8 
detention of the occupant. Id. at 702-03. Balancing these factors, the Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupant of the premises while a proper search is conducted." Id. at 705.
 {¶ 15} The Court in Summers did not define the term "occupant." However, the Tenth District Court of Appeals considered the issue of what constitutes an "occupant" and relying on Summers, stated: "[t]he issue becomes whether there is such a relationship between the premises and the detained individual that the police may make a reasonable connection between the person and his property within the house."State v. Schultz (1985), 23 Ohio App.3d 130, 133. In Schultz, the defendant was present at a home during the execution of a search warrant. Though he was not a regular resident, the police knew that he had been at the residence since the previous evening. The police also had information that defendant was known to carry a weapon and that he had several times boarded planes to Florida while carrying large amounts of cash. When the officers entered the premises, they detained defendant and handcuffed him for "security reasons." During the search of the premises, officers found a coat and when asked, defendant replied that it was his. The officers searched the coat, discovered cocaine in the pocket, and arrested defendant. Defendant later sought to suppress the cocaine, arguing that his initial detention was unlawful because he was not a resident of the apartment. In rejecting his argument, the court concluded that the important police interests set forth inSummers, "combined with the `articulable facts' that enabled the police to know of defendant's suspected connection to the drug traffic, tendency to carry *Page 9 
weapons, and location for at least overnight in the apartment to be searched, justify the detention of defendant during the search."Schultz at 133.
 {¶ 16} Appellant argues that because he was not an actual resident or "occupant" of the apartment named in the search warrant,Summers does not justify his initial detention. He argues that, unlike the defendant in Summers, who was "descending down the steps" as officers arrived, he left the residence 10 to 15 minutes before the execution of the search warrant and was standing in the doorway of a different apartment when the tactical team "hit the residence" named in the search warrant. Moreover, he asserts that Schultz is distinguishable because he was not inside the premises to be searched when the officers detained him. He also argues that Schultz fails to justify his detention because the limited information law enforcement had in its possessionat the time of his detention failed to constitute "articulable facts" demonstrating that he had a "reasonable connection to the premises." Specifically, he argues that, contrary to the State's assertions, information officers learned during the execution of the search warrant cannot be used to establish that he was an "occupant" or that he had a "reasonable connection to the premises." Finally, he argues that, although his name appears in the search warrant affidavit in relation to alleged drug sales, the information is unreliable.
 {¶ 17} We reject appellant's contention that his initial detention was illegal. "A warrant for the search of premises implicitly confers a limited authority on police officers to conduct investigative detentions of individuals found on the premises who can be reasonably connected to the property." State v. Forts (1995), 107 Ohio App.3d 403, 405, quotingState v. Cancel (June 28, 1990), Cuyahoga App. No. 56727, *Page 10 1990 WL 88743, in turn, citing Schultz, supra. "More importantly, law officers executing a search warrant for a known drug house may detain individuals observed leaving the house who may be reasonably connected to drug activity." Forts at 405, quoting Cancel, supra, in turn, citingState v. Bridges (Oct. 5, 1989), Cuyahoga App. No. 55954,1989 WL 117339, dismissed, 51 Ohio St.3d 703 (1990).
 {¶ 18} In Bridges, the Eighth District Court of Appeals upheld the detention of a non-resident who was leaving a known drug house when police arrived to execute a search warrant. The defendant argued that his detention outside the premises and his subsequent arrest were illegal, that the consent form he later executed for the search of his own residence was, therefore, invalid, and that the evidence against him should have been suppressed. In finding that his initial detention was lawful, the court noted that "police surveillance and information from their informant had identified the defendant as a suspect in the house's drug activities prior to the execution of the search warrant."Bridges, supra, at *2. The court also noted that "[controlled purchases at the house had confirmed the fact that illegal drug transactions occurred at the house." Id. Accordingly, the court determined that the police had a "reasonable basis to detain the defendant during the search upon observing his departure from the front door of the house." Id.
 {¶ 19} Here, Sgt. Large obtained a search warrant for the apartment based upon (1) numerous complaints of suspicious activity, (2) information from at least three police informants that appellant and Morehead were selling crack cocaine from the apartment, (3) controlled drug purchases at the apartment by an informant, and (4) police surveillance. Thus, similar to the facts in Bridges, prior to the execution of the search warrant, police information identified appellant as a suspect in the apartment's drug *Page 11 
activities, and controlled purchases at the apartment had confirmed the fact that illegal drug transactions had occurred at the apartment. Based on this information, we find that the police had an articulable basis for suspecting that appellant was involved in the illegal drug activity at the premises to be searched. While appellant now argues that this information was unreliable, our review of the hearing on the motion to suppress indicates that appellant failed to raise this issue there. We will not consider it for the first time here.
 {¶ 20} Moreover, on the day police executed the search warrant, Sgt. Large performed surveillance of the apartment for purposes of the execution of the warrant. Prior to its execution, Sgt. Large, who was the affiant of the search warrant affidavit, personally observed appellant, who was specifically named in the search warrant affidavit in connection with drug sales, leave the apartment. Approximately 10 to 15 minutes later, just before the officers executed the warrant, appellant returned to the apartment building. Though he did not re-enter the apartment, he was standing outside in the doorway or on the stoop of the downstairs apartment immediately below the apartment when the tactical team "hit the residence."[1] We believe the information known to police prior to the execution of the search warrant for the apartment — a known "drug house" — along with the circumstances surrounding appellant's recent departure from the apartment and his presence outside the premises in close proximity to the apartment to be searched, demonstrated a sufficient connection between appellant and the apartment's drug *Page 12 
activities so as to provide police with a reasonable basis to temporarily detain him during the search.
 {¶ 21} For all these reasons, we conclude that appellant's initial detention was lawful. Appellant does not challenge the trial court's finding that he had been Mirandized before he made any incriminating statements and before he voluntarily opened the safe. Therefore, we conclude that the trial court properly denied appellant's motion to suppress, and we overrule appellant's sole assignment of error.
 JUDGMENT AFFIRMED. *Page 13 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.
[1] As set forth above, based on Sgt. Large's testimony at the suppression hearing, the trial court specifically found that appellant was standing outside on the stoop at the downstairs apartment. While appellant testified that he was inside the downstairs apartment, we must defer to the trial court's resolution of credibility issues. SeeState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Nonetheless, because appellant does not raise this issue on appeal and essentially concedes that he was not inside the downstairs apartment when he was detained, we need not address this issue further. *Page 1