[Cite as *State v. Muldrow*, 2017-Ohio-8839.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-393 |
| v. | : | (C.P.C. No. 15CR-4093) |
| Clifford C. Muldrow, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 5, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *Dennis W. McNamara*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Clifford C. Muldrow, appeals an amended judgment entry of the Franklin County Court of Common Pleas, entered on May 26, 2017, which ordered him to serve five years' imprisonment for the offense of cocaine possession. Muldrow seeks reversal of a November 23, 2016 decision denying his motion to suppress evidence. We find that the police had reasonable suspicion to stop Muldrow's car after he had left his residence. We therefore affirm the decision and judgment of the trial court.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 21, 2015, a Franklin County Grand Jury indicted Muldrow for possession of cocaine in an amount equal to or exceeding 27 grams but less than 100 grams. (Aug. 21, 2015 Indictment.) Muldrow entered a not guilty plea. (Aug. 26, 2015 Plea Form.)

{¶ 3} Approximately three weeks later, Muldrow filed a motion to suppress the evidence against him. (Sept. 15, 2015 Mot. to Suppress.) After briefing by both sides, on

October 23, 2015, the trial court held a hearing on the motion to suppress. (Oct. 23, 2015 Mot. Hearing Tr., filed Jan. 22, 2016.) At the hearing a single witness testified, Detective Walter Miller. *Id.* at 4.

{¶ 4} Miller testified that the police received a tip from a person who was allegedly identified to the police but whose name is not reflected in the record. *Id.* at 5-6, 18-19. The tip was to the effect that Muldrow and his girlfriend ("Cami" or "Cammi" Williams) were engaged in drug trafficking at 3988 Fulton Street. *Id.* at 5-6, 18-19, 24; State's Hearing Ex. 1, filed Jan. 22, 2016 (see page 1 of the warrant affidavit). Based on the tip, the police surveilled the house and performed two "trash pulls"[1] of refuse believed to be associated with the residence. (Mot. Hearing Tr. at 7-11.) The police recovered baggies in both "trash pulls" that tested[2] positive for cocaine residue. *Id.* at 9-11. They also performed a criminal history check of Muldrow, which showed a number of arrests in connection with drug activities. *Id.* at 11-12. Miller also related that he had seen Muldrow "many times" at the residence during surveillance. *Id.* at 25-26.

{¶ 5} Based on this evidence, the police obtained a warrant to search 3988 Fulton Street and "any persons" at such premises or on the curtilage of such premises for cocaine or other evidence related to illicit drug trafficking.[3] (State's Hearing Ex. 1; Mot. Hearing Tr. at 12.) Some time after obtaining the warrant, the police observed Muldrow arrive at 3988 Fulton Street. (Mot. Hearing Tr. at 13.) In response, Miller gave the order to an accompanying tactical team to execute the search warrant. *Id.*

{¶ 6} But, after only five or ten minutes, while the tactical team was still en route, Muldrow got back in his car and drove away. *Id.* at 14, 26. There is neither indication nor argument in the record that Muldrow was aware of the impending search. Seeing Muldrow leave the house, Miller ordered the surveillance team to stop Muldrow's car. *Id.* at 14-15. The surveillance team, in turn, radioed an officer in a cruiser who stopped Muldrow approximately two or three blocks from 3988 Fulton. *Id.* Miller testified that he was

---

[1] A "trash pull" involves the police retrieving and searching trash that has been abandoned for garbage collection. (Mot. Hearing Tr. at 7-8.)

[2] One sample was subjected to only a field test while the other was tested in a laboratory setting. (Mot. Hearing Tr. at 9-11.)

[3] The Supreme Court of Ohio has upheld the validity of "any person" warrants only where "the supporting affidavit shows probable cause that every individual on the subject premises will be in possession of, at the time of the search, evidence of the kind sought in the warrant." *State v. Kinney*, 83 Ohio St.3d 85 (1998), syllabus.

present when Muldrow was stopped and taken out of his car. *Id.* at 15-16. He related that when Muldrow emerged from his car he had a baggie in his hand that contained the drugs for which he was eventually indicted in this case. *Id.*

{¶ 7} Miller testified that he ordered Muldrow stopped because Muldrow was the suspect identified in the original tip, they needed to talk to him, and to bring him back to the scene of the search. *Id.* at 14. Miller admitted he had no specific evidence to believe that evidence of criminal activity was going to be found on Muldrow's person or in his vehicle when he ordered the stop. *Id.* at 19-20. However, based on Muldrow's criminal history, the tip, the trash pulls, and the surveillance showing Muldrow's comings and goings, he believed Muldrow was making drug deliveries and suspected Muldrow might be carrying drugs. *Id.* at 16-18.

{¶ 8} Following oral argument by both parties on the motion to suppress, the trial court ruled from the bench and granted the motion. *Id.* at 58-60. The trial court found the stop of Muldrow not authorized by the warrant because Muldrow was not present at 3988 Fulton or on the curtilage of the property when the warrant was executed. *Id.* at 59. It found that the officer who stopped Muldrow and the officer who radioed that officer had not testified and thus there was no evidence from which to determine whether or not there were good grounds for stopping Muldrow. *Id.* at 59-60. The trial court also stated that it believed that Miller had acknowledged that he did not have probable cause to stop Muldrow. *Id.* at 60.

{¶ 9} The State appealed the suppression and, on June 30, 2016, this Court reversed the decision of the trial court. *State v. Muldrow*, 10th Dist. No. 15AP-1119, 2016-Ohio-4774. We concluded that the trial court erred in failing to correctly apply the "collective knowledge doctrine." *Id.* at ¶ 18. Specifically, we found that the trial court should not have focused on the fact that the officers conducting the stop did not testify because the salient issue was whether the officer who ordered the stop, Miller, had the requisite level of reasonable suspicion. *Id.* at ¶ 18, 21-22. We also found that the trial court erred in characterizing Miller's testimony as an admission that he lacked probable cause for the stop because the proper legal question was whether the police had "reasonable suspicion" for the stop and "reasonable suspicion is less than the level of suspicion required for probable cause." *Id.* at ¶ 23-25.

{¶ 10} On remand, the trial court denied the motion to suppress. (Nov. 23, 2016 Decision & Entry.) The trial court concluded that the facts uncovered by the investigation gave rise not only to probable cause for the warrant to search 3988 Fulton, but also to a reasonable suspicion that Muldrow was involved in the possession and sale of drugs. *Id.* at 4. The trial court also concluded that the State had established a sufficient connection between Muldrow and the property to be searched to justify the stop. *Id.* at 5. The trial court therefore decided that the stop of Muldrow after leaving 3988 Fulton was justified. *Id.* at 4-5.

{¶ 11} On April 6, 2017 Muldrow pled "no contest" to the indicted charge of cocaine possession. (Apr. 6, 2017 Plea Form.) After holding a sentencing hearing on May 19, 2017, the trial court sentenced Muldrow to serve five years in prison and fined him $10,000. (Sentencing Tr., filed June 30, 2017; May 25, 2017 Jgmt. Entry.)[4]

{¶ 12} Muldrow now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 13} Muldrow presents a single assignment of error for review:

> THE TRIAL [COURT] ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS.

## III. DISCUSSION

{¶ 14} In reviewing a decision on a motion to suppress, we defer to the trial court's factual determinations and review its recitation of historical facts for "clear error," but we review statements of law and the application of law to facts de novo. *See, e.g., Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 15} "The United States Supreme Court recognizes three categories of police-citizen interactions: (1) a consensual encounter, which requires no objective justification, * * * (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity, * * * and (3) a full-scale arrest, which must be supported by probable cause." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 13 (10th Dist.), citing *Florida v. Bostick*, 501 U.S. 429 (1991); *Brown v. Illinois*, 422 U.S. 590 (1975); *Terry*

---

[4] The trial court amended Muldrow's sentencing entry on May 26, 2017, suspending payment of the fine while Muldrow is in prison. (May 26, 2017 Am. Jgmt. Entry at 2.)

*v. Ohio*, 392 U.S. 1 (1968). Stopping a car and detaining its occupants constitutes a seizure, generally an investigatory stop of the second variety. *Delaware v. Prouse*, 440 U.S. 648, 653-55 (1979); *see also, e.g.*, *Arizona v. Johnson*, 555 U.S. 323, 326 (2009).

{¶ 16} In this case, the trial court decided there were two justifications for the stop of Muldrow. *Compare* Nov. 23, 2016 Decision & Entry at 4 *with id.* at 5. The first was that reasonable suspicion existed that Muldrow "had or was violating Ohio law governing the possession of cocaine." *Id.* at 4. The second was that "the State established a reasonable connection between [Muldrow] and the property to be searched pursuant to a valid search warrant." *Id.* at 5. We first address the second justification.

## A. Whether the Stop of Muldrow was Permissible Incident to the Execution of the Warrant

{¶ 17} Muldrow argues in essence that the trial court erred in finding that the search warrant of 3988 Fulton Street justified the traffic stop that did not occur on those premises. (Muldrow's Brief at 10-15.) We agree, insofar as the trial court held that the search was justified as incident to the warrant.

{¶ 18} In 1981, the United States Supreme Court decided that, incident to the execution of a search warrant on a house, police officers were justified in detaining a person descending the front steps of the house as they arrived to execute the warrant. *Michigan v. Summers*, 452 U.S. 692, 693, 705-06 (1981). In an expansion of this decision, the Sixth Circuit Court of Appeals found that officers were justified in stopping a defendant as he drove away from his house which, unbeknownst to him, was about to be searched. *United States v. Cochran*, 939 F.2d 337, 338-40 (1991). Here, the trial court appears to have followed *Cochran* in perhaps expanding *Summers* to justify stopping Muldrow, having driven several blocks from the scene and apparently unaware of the search before being stopped. (Nov. 23, 2016 Decision & Entry at 5.)

{¶ 19} But *Cochran* and cases reliant on its holding are no longer the law because, in 2013, the United States Supreme Court decided *Bailey v. United States*, 568 U.S. 186 (2013). In *Bailey*, the Court held that a warrant to search a house did not justify stopping a car that left the house shortly before the execution of the warrant. *Id.* The Supreme Court explained that "*Summers* recognized that a rule permitting the detention of occupants on the premises during the execution of a search warrant, even absent individualized suspicion, was reasonable and necessary in light of the law enforcement interests in

conducting a safe and efficient search." *Id.* at 200. This is because law enforcement interests in ensuring that persons at the scene of the search are not disruptive, dangerous, or destructive during the search, justify the detention incident to the search. *Id.* at 194-99. But these concerns are not present when the person to be stopped has already left the scene of the search when the search begins. *Id.* at 199. For that reason, the Court "circumscribed" *Summers* and concluded "[t]he categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched." *Id.* at 199-200. We recognize that *Cochran*'s prior holding that "*Summers* does not impose upon police a duty based on geographic proximity" is no longer the law. *Cochran* at 339.

{¶ 20} In Muldrow's case, he left 3988 Fulton Street before the search began and there is no reason in the record to support an inference that he would or could interfere with the warranted search at that point. There was no basis to detain him incident to the execution of the warrant because his circumstances were not within the limits prescribed by *Bailey*. To the extent the trial appears to rely on *Cochran*'s overruled view of *Summers*, it is erroneous.[5]

## B. Whether the Stop of Muldrow was Justified by Reasonable Suspicion that he was Committing or About to Commit an Offense

{¶ 21} *Bailey* made clear that stops like the one in this case, which are not in the "immediate vicinity" of the place to be searched, are not justifiable purely as incident to the execution of the warrant. Yet *Bailey* recognized that other justifications may still exist justifying this kind of stop:

> Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake. Once an individual has left the

---

[5] We note that the trial court also relied on decisions of various Ohio district courts of appeals. None are factually on all fours with this case and all predate *Bailey*. *See State v. Jester*, 12th Dist. No. CA2010-10-264, 2012-Ohio-544, ¶ 3-4 (defendant was stopped and searched directly in front of house to be searched); *State v. Jacobs*, 4th Dist. No. 08CA3028, 2009-Ohio-68, ¶ 4 (detained while standing just outside an apartment building doorway); *State v. Forts*, 107 Ohio App.3d 403, 406 (9th Dist.1995) (court upholds a stop within feet of a drug house and specifically notes that the stop would not have been permissible if the suspect had been ten blocks away); *State v. Cancel*, 8th Dist. No. 56727, 1990 WL 88743, 1990 Ohio App. LEXIS 2673, *3 (June 28, 1990) (defendant was stopped within five feet of the entrance door); *State v. Bridges*, 8th Dist. No. 55954, 1989 WL 117339, 1989 Ohio App. LEXIS 4969, *3 (Oct. 5, 1989) (defendant was arrested shortly after he walked out of the front door of a suspected drug house); *State v. Schultz*, 23 Ohio App.3d 130, 132-33 (10th Dist.1985) (upholding detention of a visitor found in a drug house and a search of the visitor's coat hanging in a closet in the target residence). More recent cases follow *Bailey*. *See, e.g.*, *State v. Cruz*, 8th Dist. No. 98264, 2013-Ohio-1889, ¶ 22-26.

> immediate vicinity of a premises to be searched, however, detentions must be justified by some other rationale. In this respect it must be noted that the District Court, as an alternative ruling, held that stopping petitioner was lawful under *Terry. This opinion expresses no view on that issue.*

(Emphasis added.) *Bailey* at 202.

{¶ 22} When we consider this language in *Bailey,* we note that the high court did not apply this rationale in that case, but we recognize that we are free to do so in Muldrow's case, since it is a recognized exception. The trial court correctly found that the stopping and searching of Muldrow was supported by reasonable suspicion.

{¶ 23} We have previously explained the contours of reasonable suspicion as follows:

> "[A]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004 Ohio 6085, P35, 817 N.E.2d 864, *quoting United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L. Ed. 2d 621.
>
> Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556-57, 591 N.E.2d 810, 8 Anderson's Ohio App. Cas. 48, *citing Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *State v. Carter*, 69 Ohio St.3d 57, 66, 1994 Ohio 343, 630 N.E.2d 355 (concluding a police "officer's inarticulate hunch will not provide a sufficient basis for an investigative stop"). Accordingly, "[a] police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones*[, 70 Ohio App.3d] at 557.

*Jones*, 2010-Ohio-2854, ¶ 16-17.

{¶ 24} In this case, the police had a tip that Muldrow and his girlfriend were dealing drugs. (Mot. Hearing Tr. at 5-6.) The record does not reveal the identity of the tipster or the basis for the tipster's knowledge that Muldrow and his girlfriend were dealing drugs. *Id.* at 5-6, 18-19, 24; State's Hearing Ex. 1 (see page 1 of the warrant affidavit). Standing alone, the tip is not considered particularly reliable. *Maumee v. Weisner*, 87 Ohio St.3d

295, 299-302 (1999).  The tip was also approximately one month old at the time of the stop, raising the possibility that the information could have been stale.  *See, e.g., State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 56.  But the tip had been corroborated by trash pulls from 3988 Fulton Street (which revealed baggies with cocaine residue inside) and by surveillance of 3988 Fulton Street (witnessing Muldrow's frequent comings and goings).  (Mot. Hearing Tr. at 7-11, 25-26.).  Partially corroborated tips are generally considered reliable.  *See Illinois v. Gates*, 462 U.S. 213, 241-44 (1983) (discussing *Draper v. United States*, 358 U.S. 307 (1959)).

{¶ 25}  Muldrow suggests in his brief that if he was only delivering drugs once per month rather than more frequently, as in the fashion of a pizza delivery person, the odds were low that, on this particular occasion, he would have had drugs.  (Muldrow's Brief at 21-23.)  While the record does not indicate exactly how frequently Muldrow came and went from the house, surveillance observed him there "many times" and on this occasion he arrived, stayed only five to ten minutes, and then left again.  (Mot. Hearing Tr. at 25-26.)  Reasonable suspicion necessary to make an investigative stop does not require the investigator to eliminate all possible innocent explanations for the behavior observed.  In the seminal case creating the category of investigative stops, *Terry v. Ohio*, the people who were stopped "casually" strolled by a shop, peering in the window on each occasion, approximately a dozen times in a few minutes and conferred with each other between each circuit.  *Terry* at 5-6.  The officer reasonably suspected that the men were "casing" the shop for the purpose of robbing it, stopped them, and found a gun during a pat down.  *Id.*  It was *reasonable* to suspect that the men were "casing" the shop even though innocent explanations could also be formulated.  Even though Muldrow could have been, for instance, on his way to the grocery store based on the corroborated tip that he was engaged in selling cocaine, having been seen "many times" at the residence from which cocaine was being sold, and having arrived and stayed for a short time just long enough to pick up something and leave, it was reasonable to stop him to investigate whether, on this particular occasion, he was on his way to deliver cocaine.

{¶ 26} Because the stop was supported by reasonable suspicion, Muldrow's assignment of error is overruled.

## IV. CONCLUSION

{¶ 27} The stop of Muldrow's vehicle was not justified as incident to the warrant to search his house. To the extent the trial court in its decision held otherwise, it erred. However, the stop of Muldrow's vehicle was supported by reasonable suspicion that Muldrow was engaged in drug trafficking because a corroborated tip suggested that Muldrow was dealing drugs from 3988 Fulton Street and, before being stopped, Muldrow had arrived at the house, stayed just five or ten minutes, and then left again. We affirm the decision of the Franklin County Court of Common Pleas to deny the motion to suppress for the reasons stated in this decision.

*Judgment affirmed.*

DORRIAN and HORTON, JJ., concur.

———————————